In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2449

PAUL D. TURNER,

*Plaintiff-Appellant,*

*v.*

THE SALOON, LTD., CHERYL GILBERG,
WILLIAM BRONNER, and MARK BRAVER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4595—**Milton I. Shadur**, *Judge.*

ARGUED JANUARY 9, 2009—DECIDED FEBRUARY 8, 2010

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Paul Turner worked as a waiter
for The Saloon, Ltd. ("The Saloon"), a Chicago steak-
house, and claims he was the victim of several forms of
employment discrimination. Turner had a months-long
sexual relationship with his supervisor and claims that
when he ended it, she persistently sexually harassed him.
He also claims The Saloon discriminated against him

on the basis of a disability; he suffers from psoriasis and says that the restaurant failed to accommodate his condition. Turner complained to restaurant management about the sexual harassment and filed an EEOC charge about the disability discrimination. He was later fired for leaving the restaurant in the middle of his shift.

Turner then sued The Saloon and several of its managers alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). Turner also alleged that The Saloon owed him unpaid overtime under the Fair Labor Standards Act ("FLSA") and Illinois' Wage Payment and Collection Act ("Wage Payment Act"). The district court granted summary judgment for the defendants, and Turner appealed.

We affirm in part and reverse in part. The district court properly rejected Turner's claims, with one exception. The district court dismissed the hostile-workplace claim after excluding most of the alleged instances of harassment as time-barred. This was contrary to the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002), which held that in a hostile-workplace claim, acts of harassment falling outside Title VII's statute of limitations may be considered as long as *some* act of harassment occurred within the limitations period. When all of the supervisor's alleged acts of harassment are considered, Turner has raised a material issue of fact regarding whether his work environment was objectively and subjectively hostile. But Turner is not necessarily entitled to a trial;

he must also establish a basis for The Saloon to be liable. We remand for the district court's consideration of that issue and any further proceedings that may be required on Turner's hostile-workplace claim.

## I. Background

Paul Turner worked as a waiter at The Saloon from 1999 to 2004, but the events underlying his employment-discrimination claims occurred between 2002 and 2004. During this period, William Bronner was The Saloon's "owner's representative," and in that capacity was responsible for creating and developing the restaurant's operating procedures and reporting directly to its owners, Sidney and Cheryl Gilberg. Mark Braver was The Saloon's general manager; he reported to Bronner and oversaw the restaurant's day-to-day operations. Denise "Dixie" Lake and Bret Dresnik were assistant managers, and they reported directly to Braver. Braver, Lake, and Dresnik supervised the remaining staff, which included Turner.

Turner's employment history at The Saloon was mixed. He was one of the restaurant's highest grossing waiters, and many regular customers would specifically request him to serve their tables. On the other hand, Turner's personnel file was littered with citations, which seemed to accumulate at a faster rate in 2004.

In 2002 Turner began a sexual relationship with Denise Lake, one of his supervisors. It lasted for about nine months, and Turner claims to have ended it in November

of 2002.[1] Turner contends that Lake retaliated against him for ending their relationship by altering his table assignments, writing him up for unwarranted discipline, and sexually harassing him. He describes at least five specific instances of overt sexual harassment. In June 2003 a customer spilled champagne on Turner's pants, and when he went to the bar area to find towels to dry himself off, Lake followed him there. She put her hands inside his pockets, grabbed his penis, and said, "You sure are soaked." In July 2003 Lake pressed her chest against him and asked, "Don't you miss me?" On New Year's Eve in 2003, Lake asked Turner to kiss her. In January 2004 Lake approached Turner from behind and grabbed his buttocks. Finally, in August 2004 Lake saw Turner with his clothes off while he was changing into his work uniform and told him that she missed seeing him naked.

Turner says Lake's advances were unwanted and he tried to get her to stop, but his protests only prompted her to retaliate against him. She reprimanded him in front of other employees, singled him out for undeserved disciplinary write-ups, and assigned him to less profitable tables.

In July 2003, after the second incident of harassment, Turner approached Braver to complain about Lake's

---

[1] Lake admits to a sexual relationship but generally denies the rest of Turner's assertions. Because we review the case on The Saloon's motion for summary judgment, we offer the version of the facts most favorable to Turner.

conduct. Turner claims Braver discouraged his com-
plaints and took no remedial action.[2] In the spring of
2004, Turner spoke to Bronner about Lake's harassment
and was told that The Saloon would investigate it.
Bronner and Braver testified in their depositions that
they met with Lake and told her that The Saloon
would not tolerate any type of sexual harassment.
Turner contends this response was insufficient.

Turner also ran into difficulty with restaurant manage-
ment over his use of the employee common area to
change into his work uniform. Turner has psoriasis, a
skin condition that affects his genital area, elbows, and
knees. He claims that wearing underwear increases his
groin sweating, which exacerbates his psoriasis-related
irritation. So he does not wear underwear. As a conse-
quence, Turner frequently exposed himself when
changing into his work uniform in the employee
common area. During the latter half of 2004, a female
employee complained about Turner's indecent expo-
sures. Braver instituted a new policy that any employee
who exposes himself while changing must change in a
restroom.

Turner thought the men's bathroom was vile and
claimed this new policy uniquely targeted him. On

---

[2] Braver acknowledges this meeting but says that Turner asked
him not to report Lake's conduct to Bronner or otherwise
launch a formal investigation; he says Turner was only inter-
ested in having Lake's harassment stop. Turner denies
Braver's characterizations.

October 4, 2004, he filed a charge with the Illinois Department of Human Rights alleging that The Saloon discriminated against him because of his psoriasis. At the same time, Turner tried to work with Braver to reach some compromise. He proposed that The Saloon install a curtain in the common area, creating a private area for him to change. Braver said he would take this idea up with Bronner, but he later simply rejected the proposal. Turner next suggested that he be permitted to change in a basement room that had no door. Braver said he would think about it. Without waiting for Braver's permission, Turner started using the basement room as a changing area. On October 7 Braver caught Turner naked while changing in the basement room. He issued Turner a written warning and suspended him for a week. When Turner returned from his suspension, Braver told him he could change in the restroom of a hotel that was located in the same building as The Saloon; Turner rejected this suggestion.[3] On October 20, 2004, Turner filed another charge of disability-related discrimination, this time with the EEOC.

On December 15, 2004, in the middle of his shift, Turner left the restaurant without notifying his supervisors and ran an errand at his bank. No other waiter was on duty at the time, and customers came in while Turner was absent. When Turner returned, Braver fired him. Turner later claimed he had obtained the hostess's approval to

---

[3] Braver disputes the timing of these events. Again, for purposes of this appeal, we accept Turner's version.

leave. He also contended his dismissal was really moti-vated by his allegations of sex- and disability-related harassment, not his unexcused absence. Braver says he discharged Turner based on his disciplinary record and for leaving the restaurant without permission in the middle of his shift.

Turner sued The Saloon and several of its managers alleging employment discrimination because of his sex and disability in violation of Title VII and the ADA.[4] He also asserted retaliation claims alleging he was dis-missed for complaining about The Saloon's sex and disability discrimination. Finally, he alleged a claim for unpaid overtime under the FLSA and the state Wage Payment Act. The Saloon moved for summary judgment, and Turner filed a cross-motion asking the court to preclude The Saloon from asserting affirmative defenses to the sexual-harassment count. The district court granted The Saloon's motion on all counts and denied Turner's motion as moot. This appeal followed.

## II. Discussion

We review the district court's grant of summary judg-ment de novo. *Chaklos v. Stevens*, 560 F.3d 705, 710 (7th Cir. 2009). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[4] We will refer to the defendants collectively as "The Saloon."

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We construe all facts and reasonable inferences in the light most favorable to Turner, the nonmoving party. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008).

## A. Title VII Sexual-Harassment Claim

We begin with Turner's claim that The Saloon is liable for Lake's sexual harassment. Title VII broadly prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Title VII generally covers two types of employment discrimination: so-called discrete acts of discrimination, such as "termination, failure to promote, denial of transfer, or refusal to hire," *Morgan*, 536 U.S. at 114, and acts that create a hostile workplace, which "are different in kind from discrete acts," *id.* at 115, and do not require tangible adverse employment actions, *see Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66-68 (1986); *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008).

Turner asserted a hostile-workplace claim based on Lake's alleged sexual harassment. This theory requires Turner to establish that: (1) he was subjected to unwelcome sexual conduct, advances, or requests; (2) because of his sex; (3) the acts were severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability. *Lapka*, 517 F.3d at 982. The Saloon does not contest the first or second

elements of this claim. It argues instead that most of the alleged acts of sexual harassment are time-barred and that the remaining acts are not severe or pervasive enough to create a hostile work environment.

The district court agreed that most of Lake's alleged acts of sexual harassment were time-barred under Title VII's statute of limitations, 42 U.S.C. § 2000e-5(e)(1). That section provides that an EEOC charge must be filed

> within one hundred and eighty days after the alleged unlawful employment practice occurred . . . , except that [if] . . . the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred.

*Id.* The district court read the statute and our cases to prohibit it from considering any of Lake's discrete acts of discriminatory conduct that occurred prior to 300 days from Turner's EEOC filing.[5] This decision excluded all

---

[5] The district court might have incorrectly settled on the 300-day limitations period rather than the 180-day limitations period. By the statute's own terms, the 180-day period applies except if the plaintiff initially instituted proceedings with a State or local agency. 42 U.S.C. § 2000e-5(e)(1). The record suggests that Turner did not file any sexual-harassment charge with an Illinois agency. In any event, this potential error does not affect our analysis. Lake allegedly told Turner that she

(continued...)

but Lake's August 2004 comment that she missed seeing Turner naked, which the court held was not sufficiently severe or pervasive to constitute unlawful discrimination.

The district court's approach to the statute of limitations conflicts with the Supreme Court's decision in *Morgan*. There, the Court held that the statute of limitations applies differently depending on whether the plaintiff is asserting a claim for a discrete act of employment discrimination or for a hostile work environment. For the former category of claim, "the statute [of limitations] precludes recovery for discrete acts . . . that occur outside the statutory time period." 536 U.S. at 105. For the latter category, however, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* Thus, under *Morgan*, an employee claiming a hostile work environment "may file the charge (under Title VII) . . . within the statutory time from the last hostile act." *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006).

The district court misapplied *Morgan*. The court referred to Lake's acts of sexual harassment as "discrete acts of discriminatory conduct," but Turner's sexual-harassment claim rests on a hostile-workplace theory, as is typical of

---

[5] (...continued)
missed seeing him naked in August 2004, which falls within both a 300-day and 180-day window from January 18, 2005, the date of Turner's EEOC filing.

Title VII cases presenting similar allegations of inappro-
priate touching. *See, e.g.*, *Kampmier v. Emeritus Corp.*, 472
F.3d 930, 941-42 (7th Cir. 2007); *Patton v. Keystone RV
Co.*, 455 F.3d 812, 814 (7th Cir. 2006); *Valentine v. City of
Chicago*, 452 F.3d 670, 682 (7th Cir. 2006); *Worth v. Tyer*, 276
F.3d 249, 268 (7th Cir. 2001); *Hostetler v. Quality Dining, Inc.*,
218 F.3d 798, 806-08 (7th Cir. 2000); *Baskerville v. Culligan
Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995); *Saxton v. Am.
Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir. 1993). Under
*Morgan*, then, the district court should have asked
whether *any* of Lake's alleged acts of sexual harassment
occurred within the statutory time period; it is undis-
puted that her August 2004 suggestive comment fell
within that window.[6] As such, the court should have
analyzed whether all of Lake's conduct, taken as a
whole, created an actionable hostile work environment.

The answer to that question turns on whether Lake's
alleged harassment was "severe or pervasive enough to
create a hostile work environment." *Lapka*, 517 F.3d at 982.
"Whether the harassment rises to this level turns on a
constellation of factors that include 'the frequency of the
discriminatory conduct; its severity; whether it is physi-
cally threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with
an employee's work performance.'" *Hostetler*, 218 F.3d

---

[6] We note that The Saloon does not argue that Lake's sexual
harassment stopped once Bronner and Braver met with her.
We assume that Lake's actions, including her August 2004
comment, were part of the same course of conduct.

at 806-07 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Further, a claim for a hostile work environment must be tested both objectively and subjectively. *Id.* at 807. That is, the plaintiff must subjectively believe that the harassment was sufficiently severe or pervasive to have altered the working environment, and the harassment must also be sufficiently severe or pervasive, from the standpoint of a reasonable person, to create a hostile work environment.

For summary-judgment purposes, the subjective element is rather easily established in this case. Turner claims that he told Lake to stop her unwanted sexual advances. It is undisputed that Turner complained to Braver and to Bronner on different occasions about Lake's behavior. Turner's complaints prompted Bronner to meet with Lake and explain that the restaurant did not tolerate any sexual harassment of employees. At the very least, Turner has created a genuine issue of material fact on the subjective element of the claim. *See Valentine*, 452 F.3d at 682; *Worth*, 276 F.3d at 267; *Hostetler*, 218 F.3d at 807.

We also think the evidence is sufficient to create a genuine issue of fact on the question whether Lake's advances were objectively hostile. We have acknowledged before that "[d]rawing the line" between what is and is not objectively hostile "is not always easy." *Baskerville*, 50 F.3d at 430.

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicita-

tions; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* (citations omitted). Perhaps the most heavily emphasized factor in our cases is whether there was inappropriate touching. *See Worth*, 276 F.3d at 268 ("The fact that conduct . . . involves touching as opposed to verbal behavior increases the severity of the situation."). This is especially true when the touching is of "an intimate body part." *Id.* ("We have previously recognized that direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment."). For example, we have affirmed a damages award or at least rejected summary judgment where there were allegations that a defendant placed his hand on the plaintiff's breast for several seconds, *id.*, when a co-worker forcibly kissed the plaintiff and nearly removed her brassiere, *Hostetler*, 218 F.3d at 807-08, when a manager slid his hand up the plaintiff's shorts, reaching her underwear, *Patton*, 455 F.3d at 814, and when the plaintiff's supervisor "hugged her fifty to sixty times, jumped in her lap ten times, [and] touched her buttocks thirty times," *Kampmier*, 472 F.3d at 941. Indeed, in cases where we have held that the evidence was insufficient to establish an objectively hostile work environment, we have emphasized that no touching occurred, *e.g.*, *Baskerville*, 50 F.3d at 431 (immediately after offering factors to consider, noting the "[supervisor] never touched the plaintiff"), or that the touching was "relatively limited," *Saxton*, 10 F.3d at 534.

Judged against these cases, Turner's complaints are sufficient to survive summary judgment. Turner has identified at least five instances of explicit sexual harassment, three of which were aggressively physical. Turner's claim that Lake grabbed his penis through his pockets is probably severe enough on its own to create a genuine issue of material fact. *See Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) ("It is important to recall that harassing conduct does not need to be both severe *and* pervasive. One instance of conduct that is sufficiently severe may be enough." (citation omitted)). In addition, Turner also testified that Lake pressed her chest against him while making a sexually suggestive comment on one occasion and grabbed his buttocks on another occasion. She also made suggestive comments when watching Turner change into his uniform. Finally, Turner claims that Lake punished him for refusing her sexual advances by assigning him to less profitable tables and by reprimanding him in front of other employees. These allegations, taken together, create a genuine issue of material fact on Turner's hostile-workplace claim.

Two features of this case make it unusual but do not affect our result. First, the plaintiff is a male and his supervisor is a female; almost all of our cases involving sexual harassment have the sexes reversed. Nevertheless, "[t]he law is well settled that sexual harassment of an employee by a supervisor is not confined to instances involving male supervisors and female subordinates; it can occur in the female supervisor-male subordinate context." *Casiano v. AT&T Corp.*, 213 F.3d 278, 285 (5th Cir.

2000). Like the Fifth Circuit, we find it helpful to "hypo-thetically transpose the sexes of the parties in this case." *Id.* If Lake were male and Turner female, and the allega-tions were similar, there would be no doubt that the case would survive summary judgment. The same con-clusion follows here.

Second, Turner and Lake had a nine-month consensual sexual relationship prior to the alleged sexual harass-ment. We have said in the past that "whether [the victim] had dated [the harasser] prior to the events in question [is] by no means dispositive of" the sexual-harassment claim. *Ammons-Lewis v. Metro. Water Reclama-tion Dist. of Greater Chi.*, 488 F.3d 739, 746 (7th Cir. 2007); *accord Johnson v. West*, 218 F.3d 725, 729-30 (7th Cir. 2000). To be sure, "the existence of a current or former social relationship between the harasser and the harassee can shed light on such relevant questions as whether the complained-of conduct was unwelcome, whether it resulted in a workplace that the harassee subjectively experienced as hostile, and whether it occurred because of the harassee's sex." *Ammons-Lewis*, 488 F.3d at 746-47. But at this stage, all Turner must do is provide enough evidence for a reasonable jury to conclude that his work-place was both subjectively and objectively hostile. As we have explained, we think Turner has reached this mark.

The next question is whether "there is a basis for em-ployer liability." *Lapka*, 517 F.3d at 982 (quotation omit-ted). The district court did not reach this issue, having excluded most of the alleged acts of harassment and concluded that the one that remained was insufficient to

establish a hostile workplace. Because Lake was Turner's immediate supervisor, The Saloon's liability may turn on its ability to assert affirmative defenses under *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). These are matters for the district court to consider in the first instance, and the court remains free on remand to consider whether The Saloon may be entitled to summary judgment in its favor on alternative grounds.

**B. Title VII Retaliation Claim**

Turner next argues that The Saloon fired him in retaliation for complaining about Lake's sexual harassment. Title VII generally prohibits an employer from retaliating against an employee for conduct that is protected under the Act. 42 U.S.C. § 2000e-3(a). Under the direct method of proof, Turner must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008). He easily satisfies the first two elements: He complained to The Saloon's management about Lake's alleged sexual harassment and was later fired. Turner's success thus hinges on whether he can establish a causal connection between the two.

Turner maintains there is a sufficient temporal connection between the two events for a reasonable jury to infer causation. We disagree. We have repeatedly held that suspicious "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation

claim." *Kampmier*, 472 F.3d at 939; *see also Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval does not preclude summary judgment). Here, there is more than half a year separating Turner's complaints to Bronner and his eventual dismissal—far too long to withstand summary judgment.

Turner suggests that a March 2004 employee evaluation in which Braver gave him a positive review is evidence of a causal connection between his complaint and his termination. The fact that Braver gave Turner a positive evaluation months *after* Turner initially complained to Braver strongly suggests the opposite—that Braver's December 2004 decision to fire Turner was *not* motivated by his complaints. Turner's argument also fails to account for the fact that from March 2004 until his termination, he received at least ten reprimands from management for, among other things, "strong—arm[ing]" an employee, failing to work with busboys, insubordination to Braver, having a "meltdown" in the kitchen, failing to attend to customers, and failing to show up for work as scheduled. In addition, he received a week-long suspension for exposing himself while changing in the basement of the restaurant. Faced with this string of discipline, and with the ten-month gap separating his complaint about Lake's sexual harassment from his termination, no rational jury could conclude that there was a causal connection between Turner's statutorily protected conduct and his termination.

Turner also attempts to lessen the force of his unexcused absence in the middle of his shift by claiming

that he had obtained permission to leave from the hostess, whom he calls a "pseudomanager." Even if we assume that he received such permission and that the hostess had the authority to grant The Saloon's only on-duty waiter permission to run errands during business hours—both points of contention—the record suggests that Braver did not know about Turner's claim of permission. According to both Turner's and Braver's depositions, when Turner returned from his bank errand, Braver called him into his office and fired him for being absent without leave while customers awaited service. Turner did not tell Braver that he had permission to leave the restaurant or even argue about his termination, so his belated claim of permission from a "psuedomanager" is beside the point. Turner has not established a triable issue of fact on his retaliation claim under the direct method of proof.

Turner also proceeds under the indirect method of proof. The distinction between the two methods of proof "is often fleeting" largely "[b]ecause both methods allow the use of circumstantial evidence." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). In any event, under the indirect method, Turner must "prov[e] that []he (1) engaged in a statutorily protected activity; (2) met h[is] employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Amrhein*, 546 F.3d at 859.

Turner fails to establish his prima facie case essentially for the same reasons he fails under the direct method: No

rational jury could believe that Turner was meeting The Saloon's legitimate job expectations. We have just described the litany of citations that Turner received from March to December of 2004. Further, we add that Turner cannot point to any other employee with a similarly checkered personnel file who was treated differently. Indeed, Turner has not suggested that anyone else failed to comply with similar management policies, and there is no evidence in the record that any other waiter left the restaurant completely unattended during business hours without being disciplined. The district court properly granted summary judgment for the defendants on Turner's Title VII retaliation claim.

## C. ADA Discrimination Claim

We turn next to Turner's claim for disability discrimination in violation of the ADA. The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Turner argues that The Saloon discriminated against him in violation of the ADA by requiring him to change in the "fecal contaminated, unsanitary" men's bathroom rather than in the employee common area. He further faults The Saloon's alleged failure to accommodate his disability when it rejected his proposals to let him change in the basement or behind a curtain.

For Turner to survive summary judgment under these theories, he must first show that he is "disabled" within the meaning of the Act. *Id.*; *EEOC v. Lee's Log Cabin, Inc.*,

546 F.3d 438, 442 (7th Cir. 2008); *Mobley*, 531 F.3d at 545. The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). Turner maintains that his psoriasis constitutes a physical impairment that limits his ability to walk, a major life activity under 29 C.F.R. § 1630.2(i). For this argument to succeed, Turner must establish that he is "substantially limited" in his ability to walk.

The applicable ADA regulations explain that a person is "substantially limited" in a major life activity when he is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). This regulation adds that "an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking." *Id.* § 1630 app. On the other hand, "an individual who had once been able to walk at an extraordinary speed would not be substantially limited in the major life activity of walking if, as a result of a physical impairment, he or she were only able to walk at an average speed, or even at moderately below average speed." *Id.*

Our cases further clarify when an individual is sub-
stantially limited in his ability to walk. We have held
that walking with difficulty is not a significant restriction
on walking. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 785
(7th Cir. 2007). We have also held that an employee is not
disabled when he admitted that he could walk "distances
of less than a mile 'consistently,' [and] that a mile walk
'wouldn't be any problem as long as I'm paying attention
to what I'm doing.'" *Moore v. J.B. Hunt Transp., Inc.*, 221
F.3d 944, 951 (7th Cir. 2000). Other circuits have reached
similar determinations. *See Wood v. Crown Redi-Mix, Inc.*,
339 F.3d 682, 685 (8th Cir. 2003) (no disability where
plaintiff could walk a quarter-mile before having to
stop and rest); *Black v. Roadway Express, Inc.*, 297 F.3d
445, 451 (6th Cir. 2002) (no disability where plaintiff walks
with a limp and plaintiff's knee becomes "dysfunctional"
after two miles of walking); *Taylor v. Pathmark Stores, Inc.*,
177 F.3d 180, 186 (3d Cir. 1999) (no disability where
employee walked with a limp and required a ten-minute
break during every hour of walking or standing).

It is clear from these cases that Turner has not come
close to establishing that his psoriasis substantially
limits his ability to walk. At worst, he says his psoriasis
periodically causes "severe pain causing him to walk
with his legs more astride appearing as a limp." Turner
admits to playing pick-up basketball and baseball a few
times per week during the summer. Indeed, he even
testified that he can "bicycle and walk usually fine." In
light of these admissions, Turner's claim that he is
disabled under the meaning of the Act fails as a matter
of law. The district court properly granted summary

judgment dismissing Turner's disability-discrimination claim.

## D. ADA Retaliation Claim

Turner also claims he was fired in retaliation for complaining about The Saloon's no-nakedness policy. The district judge did not mention this count in his opinion granting summary judgment for the defendants, and for understandable reason. Despite alleging separate claims for retaliation under both the ADA and Title VII, Turner's briefs in the district court reference his "retaliation claim" as a whole. Turner could have easily avoided confusion by keeping his causes of action separate from one another. Regardless, the parties have argued the ADA-retaliation claim separately on appeal; for the sake of completeness, we will briefly sketch the required analysis.

The fact that Turner is not disabled under the ADA is not fatal to his retaliation claim. 42 U.S.C. § 12203(a); *Squibb*, 497 F.3d at 786. "The Act prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim." *Squibb*, 497 F.3d at 786. As in the Title VII context, Turner may proceed under the direct and indirect methods of proof. To prove retaliation under the direct method, Turner must "present[] evidence of: '(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two.'" *Id.* (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006)). Turner meets the first

two elements of the test because he filed discrimination charges with the EEOC and was later fired. His claim fails, however, under the causal-connection element. Turner again relies mostly on timing. Although the temporal connection is closer for his ADA-retaliation claim, it still is not enough. He was fired roughly two months after he filed his EEOC charge. We have previously held that a seven-week proximity in time is not sufficient to establish a causal connection to withstand summary judgment. *See Argyropoulos*, 539 F.3d at 734.

Beyond timing, Turner offers the same arguments as he did in the Title VII retaliation context, which we have already rejected. Turner's ADA-retaliation claim therefore fails under the direct method of proof. Similarly, for the reasons canvassed above, Turner has not established his prima facie case under the indirect method because he cannot show either that he was performing his job satisfactorily or that there is any similarly situated employee who was treated differently. *See Squibb*, 497 F.3d at 788-89.

### E.  Wage Claims

Finally, we turn to Turner's wage claims. Turner asserts that from late 2003 through 2004, he worked with Lake on several Sundays and that Lake often directed him to alter his time records to make him ineligible for

overtime pay in violation of the FLSA, 29 U.S.C. § 207.[7] Turner believes he has been denied a "substantial amount" of money because of Lake's actions. He also suggests he has information confirming the amount of overtime he was denied, but this "information" has never been placed in the record. The Saloon challenged Turner's claims by introducing its payroll records, which show that Lake and Turner worked together on only four Sundays during the time period at issue. On two of those Sundays, Turner's hours for the week were extremely low, suggesting that any time-shaving on Sunday was unnecessary. For the other two Sundays, Turner actually received overtime pay.

The district court granted summary judgment dismissing the wage claims, concluding that Turner's arguments were "unsupported ipse dixit [that] is flatly refuted by the hard evidence proffered by Saloon." The court's decision was manifestly correct; this claim is flimsy in the extreme. Turner has the burden of proving that he performed overtime work for which he was not properly compensated, and if he contends that his employer's records are not accurate—which he does—then he must "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery*

---

[7] Because the protections of the Illinois Wage Payment and Collection Act are coextensive with those of the FLSA, *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993), our analysis of Turner's FLSA claim applies equally to his Illinois Wage Payment Act claim.

*Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by statute*, Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262. Although Turner disputes the accuracy of The Saloon's records, his mere assertions are insufficient to create a jury issue.[8] *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (opponent of summary judgment must do more than raise "some metaphysical doubt as to the material facts"). Turner's wage claims were properly dismissed.

For the foregoing reasons, the judgment of the district court is AFFIRMED to the extent that it dismissed Turner's ADA claims, his overtime claims, and his Title VII retaliation claim. Regarding Turner's sexual-harassment claim under Title VII, the judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

[8] The one piece of record evidence Turner points to—a document cryptically saying "Turner 38.88 hours—cut first"—is inconclusive at best.