In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-3076

TAMIKA JONES,

*Plaintiff-Appellant*,

*v.*

RES-CARE, INCORPORATED and
SHANE MCFALL,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 07 CV 845—**William T. Lawrence**, *Judge*.

ARGUED MARCH 31, 2010—DECIDED JULY 16, 2010

Before MANION and WILLIAMS, *Circuit Judges*, and
DARRAH, *District Judge*.[*]

DARRAH, *District Judge*. Tamika Jones filed suit against
her employer, Res-Care, Inc., and another Res-Care em-
ployee, Shane McFall, in the United States District Court

---

[*] Honorable John W. Darrah, United States District Judge for
the Northern District of Illinois, is sitting by designation.

for the Southern District of Indiana. Jones alleged discrimination because of race and retaliation under Title VII of the Civil Rights Act of 1964. Jones also brought claims under state law for slander *per se*, negligent supervision and vicarious liability under the doctrine of *respondeat superior*. On July 21, 2009, the district court granted Defendants' motion for summary judgment on all claims.

## BACKGROUND

Jones is an African-American female who was thirty-two years old at the commencement of this suit. Jones was hired by Res-Care on February 19, 2001, to work in its facility in Indianapolis, Indiana. Jones's initial position was "program director." On January 20, 2003, Jones transferred positions, becoming a "scheduler." On September 20, 2004, Jones transferred positions again, becoming a Human Resources Representative.

Jones claimed that her job responsibilities increased substantially with each of these transfers and that, at the time, she considered both moves promotions. However, Jones's compensation did not increase. Jones points to several Caucasian Res-Care employees who did receive pay increases upon being transferred to positions with greater responsibilities. Jones, after taking on added job responsibilities, requested a pay increase from McFall, the Executive Director of the Indianapolis facility; but McFall refused.

Jones claimed that when McFall was Executive Director, Caucasian employees in the Human Resources

Department were treated more favorably than African-American employees. Jones was required to submit a Paid-Time-Off request ("PTO") to receive time off; whereas, non-African-American employees took paid vacation time without being required to submit a PTO. McFall also denied Jones's request for tuition reimbursement for a course she took in managing business information systems, despite having approved tuition reimbursement requests from non-African-American employees.

Before McFall became Executive Director at the Indianapolis facility in April 2005, he was Executive Director of Res-Care's facility in Sheridan, Indiana. When McFall left Sheridan to come to Indianapolis, Jones applied for the Sheridan Executive Director position. Of the four applicants for the position, Jones was the only African-American. As part of the application process, Jones interviewed with McFall. Jones claimed that, rather than engage in substantive discussions about the job, McFall made several comments suggesting that Jones would not be a good fit for the Sheridan position because of her race. Jones was not hired for the Sheridan position.

In November 2005, Jones applied for the position of Director of Human Resources at the Indianapolis facility. Jones had acted as Interim Director of Human Resources on two prior occasions and had received training for the position from the outgoing Director. McFall conducted what Jones calls a pro-forma interview with Jones but hired a Caucasian, Janice Neefe, for the position.

Around June 2006, the position of Director of Supported Living became vacant. Jones claimed to have told McFall that she was interested in the position. McFall allegedly made it clear to Jones that she would not be hired for the position because she was not on his team. McFall hired a Caucasian individual for the position.

On August 11, 2006, Jones filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Jones cited, among other alleged instances of discrimination on the basis of race, the failure to promote Jones to Human Resources Director and disparate treatment with respect to tuition reimbursement.

On September 7, 2007, Neefe gave Jones a written memorandum stating that if Jones varied her schedule by more than fifteen minutes per day, she was required to confirm the requested variation with Neefe. Neefe took this action because Jones's unauthorized schedule variations vastly exceeded those of any other employee that Neefe supervised.

In 2007, Jones requested time off for her wedding and honeymoon. Jones indicated that she would need two weeks off at some point in late September to mid-October but that she did not know the exact dates due to the uncertainty of her fiancé's schedule. The request was approved by Neefe. Jones took the time off; but because of changes to her husband's military schedule, Jones arrived back at work three days early. Neefe considered Jones's early return a violation of Neefe's instruction that Jones could not vary her schedule by more

than fifteen minutes per day. As a result of her early return, Jones received a corrective action.

In May 2005, Res-Care conducted an internal investigation of the Indianapolis facility employees due to allegations of embezzlement. During the investigation, McFall learned that Jones had signed for some employee lunches that had been improperly charged to Res-Care. During the investigation, Jones and four other employees were suspended without pay. One of the five was terminated; and the others, including Jones, returned to work.

During her deposition in this case, Dawna Peterson, Director of Human Resources at the time of the investigation, testified that in July or August of 2005, McFall called Jones either a rat or a fink. In November 2005, McFall told another Res-Care employee that Jones was untrustworthy.

Jones filed this suit against Res-Care on June 28, 2007. Jones subsequently filed a second charge of discrimination with the EEOC in November 2007, alleging that the corrective action arising from the August 2007 incident was in retaliation for Jones's filing the initial EEOC charge. Plaintiff was granted leave to file an Amended Complaint, adding allegations set out in her November 2007 EEOC charge.

## DISCUSSION

We review the district court's granting of summary judgment *de novo*. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010).

*Jones's Title VII Claim*

The district court concluded that all of Jones's Title VII claims, except her retaliation claim, were barred due to Jones's failure to either timely file with the EEOC or to include those claims in her EEOC charge. The district court held that because Jones did not file an EEOC complaint until August 11, 2006, any claims for unlawful activity that occurred before February 12, 2006, 180 days prior to the date of filing the EEOC charge, were time-barred. Other than the retaliation claim, this left only Jones's claim for failure to promote her to the Director of Supported Living position in June 2006 and the denial of tuition reimbursement in November 2006. Because neither of those claims was presented to the EEOC, the district court held that they were barred. On appeal, Jones argues that her time-barred claims should be allowed to proceed under either the doctrine of continuing violation or the doctrine of equitable tolling. Jones also argues that her failure-to-promote claim regarding the Director of Supported Living position was reasonably related to the claims made in her EEOC charge such that it should not be procedurally barred.

Jones first argues that the alleged discriminatory acts that occurred prior to February 12, 2006, should be actionable under the continuing violation doctrine. However, while Jones offers a brief discussion of that doctrine, she fails to specify how it applies to this case. Here, the discriminatory actions alleged are all discrete acts; Jones has not argued to the contrary. *See Turner*, 595 F.3d at 684 (distinguishing between discrete acts of discrim-

ination and hostile-work-environment claims). In such cases, the law precludes recovery for those discrete acts that occur outside the relevant statute of limitations, here, 180 days. *See id*. (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) (*Morgan*). Thus, Jones's first attempt to resurrect her time-barred claims fails.

Jones next argues that those claims should be saved by equitable tolling. Equitable tolling may only extend a deadline when "despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). Again, Jones presents no argument as to how the facts of this case meet the applicable standard. The two claims Jones attempts to save through equitable tolling are Res-Care's decisions not to hire Jones for either the Executive Director position in Sheridan or the Human Resources Director position. With respect to the Sheridan position in 2005, Jones alleges that McFall, in interviewing Jones for the position, avoided substantive questions about the position and instead made several comments implying that Jones's race made the Sheridan position a bad fit for her. Given McFall's comments, Jones should have been aware of the possibility that she had a claim. The same is true of Res-Care's subsequent failure to hire Jones for the Human Resources Director position. Given McFall's comments in November 2005, Jones should have known that she had a possible claim. The Supreme Court has instructed that equitable tolling is a doctrine to be applied sparingly in Title VII cases. *Morgan*, 536 U.S. at 113. This is not a case that justifies its application.

Jones finally argues that the district court should have permitted her to proceed on certain claims that she had not included in either of her EEOC charges. As Jones admits, generally, Title VII claims that were not included in an EEOC charge are barred. *See Sitar v. Indiana Dept. of Transportation*, 344 F.3d 720, 726 (7th Cir. 2003). However, Jones insists that those Title VII claims that were not raised in her EEOC charges are so closely related to those that were that she should be able to pursue them now.

For a plaintiff to proceed on a claim not raised in an EEOC charge, "there must be 'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). Jones argues the conduct of McFall in dissuading Jones from applying for the Director of Supported Living position is reasonably related to the allegations in her EEOC charges. Jones suggests that this claim, like the rest of Defendants' actions, was "part of a pattern of discrimination by Res-Care and its agents." But this is not enough. Any additional alleged act of discrimination can always be fit in and become part of an overall general pattern of discrimination. Jones's argument, if accepted, would eviscerate the general rule that each separate act of discrimination must be set out in an EEOC charge before an action can be brought.

Therefore, Jones's Title VII claims, with the exception of her retaliation claim, are barred.

Regarding Jones's retaliation claim, Jones asserts that the corrective action she received in October 2007 was in retaliation for filing her August 11, 2006 EEOC charge. However, the district court found that Jones could not prove her claim under either the direct method or indirect method. On appeal, Jones argues that she met her burden under the direct method but apparently concedes that she could not make out a case under the indirect method.

Under the direct method, a plaintiff makes out a *prima facie* case by showing (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action taken by her employer, and (3) a causal connection between the two. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008). With regard to the second factor, this Court has previously held that "unfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment actions." *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) (emphasis added). Jones concedes that the corrective action alone does not rise to the level of an adverse employment action.

However, Jones asserts that there was "a palpable tension" at the time Jones received the adverse employment action due to her pending litigation against Res-Care. This tension, she argues, combined with the corrective action, rose to the level of an adverse employment

action. This argument is not persuasive. A plaintiff's subjective determination of tension in the workplace, without more, cannot constitute an adverse employment action absent a tangible job consequence.

Furthermore, even if Jones could show that she suffered an adverse employment action, she has not shown that it was causally related to her EEOC charge. Jones argues that the district court erred by relying solely on the length of time that had passed between her EEOC charge and the corrective action in finding that there was no causal link. Jones misreads the district court's discussion of the issue. The district court noted Jones's failure to point to any evidence that supported the causal link, as was her burden. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008) (a plaintiff proceeding under the direct method must show a causal link between the statutorily protected activity and the adverse employment action.) The district court's comment about the lack of temporal proximity only points out that to the extent that factor favors either side, it favors Defendants. Jones still has not pointed to any evidence of a causal link. Thus, she cannot establish a *prima facie* case under the direct method.

For the foregoing reasons, the district court properly held that all of Jones's Title VII claims, with the exception of her retaliation claim, were barred and that Jones could not meet her burden to avoid summary judgment on her retaliation claim.

*State-Law Claims*

Jones also appeals the district court's grant of summary judgment on her state-law claims of defamation against McFall and vicarious liability for that defamation against Res-Care. Jones's defamation claim stems from two statements made by McFall: (1) McFall told Peterson that Jones was a "rat" or a "fink" and (2) McFall told another employee that Jones was not trustworthy. The district court found that both statements were covered by a qualified privilege.

Under Indiana law, alleged defamatory statements are protected by a qualified privilege if they are "made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Kelley v. Tanoos*, 865 N.E.2d 593, 598 (Ind. 2007). "Intracompany communications regarding the fitness of an employee are protected by the qualified privilege, in order to accommodate the important role of free and open intracompany communications and legitimate human resource management needs." *Schrader v. Eli Lilly and Co.*, 639 N.E.2d 258, 262 (Ind. 1994). However, a communication that would otherwise be covered by the privilege loses that protection if the plaintiff shows that the privilege has been abused. *Id*. Abuse occurs where (1) the statement was primarily motivated by ill will, (2) there is excessive publication, or (3) the statement was made without belief or grounds for belief in its truth. *Id*.

Here, Defendants have shown that the privilege applies, and Jones has not shown that there was abuse of the privilege. Both statements related to Jones's trustworthiness and were made only to an individual within the company. Jones argues that McFall's use of animal terms is evidence of malice and, therefore, implicitly argues that McFall was primarily motivated by ill will. But Jones has offered no other evidence of ill will towards her by McFall. Here, considered in context, the use of a somewhat offensive term, alone, does not show that the statement, even if otherwise defamatory, was motivated primarily by ill will and was an abuse of the privilege. Therefore, summary judgment was properly granted as to the defamation claim.

Summary judgment was also properly granted on Jones's claim against Res-Care for vicarious liability. That claim is depended on the defamation claim and so must also fail.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.