NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 15, 2013[*]
Decided April 15, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3386

| | |
|---|---|
| TERESA D. GRAVES, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Indiana, |
| | South Bend Division. |
| *v.* | |
| | No. 3:10CV315 |
| ST. JOSEPH COUNTY HEALTH | |
| DEPARTMENT, | Theresa L. Springmann, |
| *Defendant-Appellee.* | *Judge.* |

**O R D E R**

Theresa Graves, a black, 59-year-old female, appeals from the dismissal at summary judgment of her lawsuit claiming employment discrimination and retaliation by her former employer, the health department of St. Joseph County, Indiana. The district court

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

concluded that Graves did not establish a prima facie case of race or age discrimination, retaliation, or hostile work environment. We affirm the judgment of the district court.

The following facts are recounted in the light most favorable to Graves. *See Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012). Graves worked for 2 years as the outreach coordinator for the health department's lead-hazards program until she was discharged in October 2009 at age 55. In that role, Graves educated the public about lead poisoning and how it can be prevented. The U.S. Department of Housing and Urban Development funded Graves's position through a grant to the South Bend Housing Authority, which contracted with the health department.

After a year on the job, Graves applied to become the leader of her program. Marc Nelson, the Director of Environmental Health and also Graves's supervisor, had intended to make a science degree part of the hiring criteria, but he dropped that qualification specifically so that Graves could apply. Megan Wright, who worked with Graves in the same program and has a chemistry degree, also applied for the vacancy. Nelson interviewed both candidates and scored them on a scale of 1 to 3 for each of 19 job requirements. He concluded that Wright was better qualified and should be chosen for the position, and made that recommendation to the Health Officer, the department's chief executive who reports to the Board of Health. Although Graves had been with the program six months longer than Wright, Nelson opined that Wright, who is white and younger than Graves, had broader program experience, demonstrated a greater understanding of the program, was widely recommended, and better met the job requirements—scoring 45 points to Graves's 39. In addition, Nelson noted that issues with Graves's attendance, professionalism, and interpersonal skills had been documented in her performance evaluations. Wright was selected.

Graves responded to the news by submitting an internal grievance in October 2008 alleging that Nelson had chosen Wright over her because of race and age. The Health Officer denied the grievance. Graves appealed to the Board of Health, which upheld the decision after its Personnel Committee heard testimony from Graves and managers involved in the hiring decision. Graves appealed again, this time to the St. Joseph County Board of Commissioners. Graves and other witnesses repeated their testimony before a commissioner, who concluded that Wright was selected because she was more qualified.

In September 2009, almost a year after lodging her first grievance, Graves submitted another alleging that Nelson had reacted to her earlier grievance by harassing and repeatedly reprimanding her with the goal of getting her fired. Health department records show that Nelson formally reprimanded Graves three times from June to September 2009 for attempting to cancel a scheduled outreach event, poor work ethic, and conflicts with

coworkers. A few days after submitting her grievance, Graves filed an administrative charge with the Equal Employment Opportunity Commission claiming that Nelson had discriminated against her based on age and race, retaliated for her pursuit of the first grievance a year earlier, and subjected her to a generally hostile work environment. Graves received a right-to-sue letter in May 2010.

Six months earlier, on October 30, 2009, the health department had notified her that funding for her coordinator position had been eliminated despite Nelson's requests to the Housing Authority that it seek a renewal of funding for the outreach program. Graves was told that her employment was terminated subject to recall if a similar position became available within a year. She also was told that this development mooted her unresolved second grievance. A few months later the health department received a new grant from the Centers for Disease Control to fund a similar outreach position. This position required a Lead Risk Assessor and Inspector license that Graves does not have, and a black woman younger than Graves was hired for the job.

Graves sued the health department in August 2010 under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 623–34. She claimed that the health department had passed her over for a promotion because of her race and age, retaliated for her grievance, and subjected her to a hostile work environment by repeatedly reprimanding her and scrutinizing her work. (Graves also claimed that she was the victim of sexual harassment, but that allegation was not included in her administrative charge.) In responding to the health department's motion for summary judgment, Graves argued that discriminatory intent could be inferred because coworkers allegedly remarked about her race, she was "singled out" to forfeit her lunch hour after using work time to watch the Presidential inauguration in 2009, the promotion went to Wright, and a younger woman was hired to fill the new outreach position that Graves expected would be given to her. She also asserted that two white men whose jobs, she says, were funded by the same HUD grant, were not fired but transferred to other positions after the grant lapsed. Graves further insisted that the purported "onslaught of reprimands and censorship" was retaliatory because it occurred only after she filed her first grievance.

The district court, in a comprehensive, careful, and thoughtful order, noted that much of Graves's response rests on hearsay, conjecture, or matters beyond her personal knowledge. A jury could not reasonably find for Graves, the court concluded, based on either the direct method or the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The evidence is undisputed, the court reasoned, that the health department thought Wright was better qualified for promotion, and that Graves later lost her existing position because the third-party funding for her salary was not renewed.

Moreover, the court explained, Graves lacked admissible evidence that the two white males she referenced even worked in the lead-hazards program, let alone were reassigned around the time her position was eliminated, had been in jobs funded by the same source, or were otherwise similarly situated. Likewise, the court added, Graves lacked admissible evidence that the black woman later hired for the job funded by the CDC was not better qualified or even substantially younger. The court further concluded, as to Graves's retaliation claim, that the timing of her discharge and the grievance she filed a year earlier could not establish a causal link between the two events. Nor was there sufficient evidence of a hostile work environment, the court continued, because Graves had not reported any incident of alleged racial harassment by a coworker. And neither did Graves offer evidence that Nelson's reprimands and increased scrutiny of her performance were racially motivated.

As we understand her brief on appeal, Graves first argues that she presented sufficient evidence of similarly situated employees to withstand summary judgment on her claims of age and race discrimination. But we agree with the district court that Graves did not produce any evidence that Wright, the two white men allegedly transferred rather than fired, or the black woman hired for the new position were similarly situated to her in every material respect. *See Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012); *Raymond v. Ameritech*, 442 F.3d 600, 610 (7th Cir. 2006).

Graves also insists that she had rebutted the health department's assertion that it hired Wright for her superior qualifications, arguing that she had more seniority and that Nelson had used a racially biased evaluation tool to "categorically disqualify" her for the job. But to demonstrate pretext, Graves would have to show that reasonable persons could not dispute that she was clearly the better-qualified candidate for the position. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006), and longer tenure does not necessarily make a person more qualified, *see Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 738 (7th Cir. 2006); *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141–42 (7th Cir. 1998). And Graves failed to produce any evidence that Nelson's evaluation was biased.

Graves next insists that she presented sufficient circumstantial evidence that she was discharged, not because the funding for her position lapsed, but because of her race or age. But she did not point to any evidence rebutting the health department's explanation for her discharge. Although the Housing Authority—which was utilizing the health department as a contractor—did receive a renewal of its HUD funding for lead inspections and clearance exams, the unrebutted evidence shows that the new HUD grant did not include funds for outreach activities like those Graves performed.

Graves also argues that a jury could reasonably find a causal link between her first grievance and the alleged retaliation because she had received mostly positive performance evaluations from Nelson and the Health Officer before she submitted that grievance and then afterward she received several reprimands before her discharge. We disagree. That the grievance preceded the reprimands does nothing to prove they were issued only because of that grievance. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758–59 (7th Cir. 2006); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). And the one-year interval between the grievance and the end of Graves's employment undermines her assertion of a causal connection, *see Porter v. City of Chicago*, 700 F.3d 944, 957–58 (7th Cir. 2012)*; Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012)*; Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687, 690 (7th Cir. 2010)*; Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir.2008); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001); *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952–53 (7th Cir. 2001) (en banc), as do notations of her poor performance in the evaluations she received before submitting that grievance, *see Turner*, 595 F.3d at 687–88, 690; *Burkhart v. Am. Railcar Indus., Inc.,* 603 F.3d 472, 477 (8th Cir. 2010).

Finally, Graves argues that she provided sufficient evidence to hold the health department liable on a theory of hostile-work environment. But for an employer to be liable for a hostile work environment created by coworkers, the employer must have been "negligent in discovering or rectifying" the coworkers's unlawful harassment. *See Berry v. City of Chi. Transit Auth.,* 618 F.3d 688, 692 (7th Cir. 2010). In her second grievance Graves complained only that Nelson harassed her through reprimands; she did not mention race or any harassing conduct by coworkers. At summary judgment it was undisputed that Graves never made the health department aware of the alleged racial harassment, and thus she cannot hold it liable for the actions of her coworkers. *See Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 549–50 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 392 (7th Cir. 2010).

We have considered Graves's other arguments, and none merits discussion. Accordingly, the judgment is AFFIRMED.