In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1361

James Bennington,

Plaintiff-Appellant,

v.

Caterpillar Incorporated,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 C 1111--Joe B. McDade, Chief Judge.

Argued November 30, 2001--Decided December 28, 2001


Before Flaum, Chief Judge, and Cudahy and
Manion, Circuit Judges.

Flaum, Chief Judge.  The appellant,
James Bennington, has filed the instant
appeal contesting the district court's
grant of summary judgment against him and
the district court's refusal to grant an
extension of discovery. For the reasons
stated herein, we affirm the decisions of
the district court.

I.  BACKGROUND

James Bennington was born in 1944 and
began his employment with Caterpillar,
Inc. ("Caterpillar") in 1965. He
continued to work with that company until
1998. In 1987, after several years of
exemplary performance, Caterpillar made
Bennington a manufacturing superintendent
in its Mossville, Illinois facility. In
the mid-1990s, Caterpillar changed
Bennington's title to unit manager.
During the course of the 1990s,
Bennington was transferred to different
areas within the Mossville plant. In
1997, Bennington was transferred to
Building DD on the Mossville plant and
was charged with the supervision of the
first shift of two assembly lines. When
Bennington was first transferred to this
position, his immediate supervisor was
Jerry Holloman. Holloman was responsible
to Paul Wroblewski, then the Operations

Manager at the Mossville facility.

The events giving rise to the current dispute began when Caterpillar implemented an initiative to bring a "team-based management structure" to the plant where Bennington worked. That initiative was entitled "Vision, Values, and Time." While Caterpillar was implementing its initiative, it was also in the process of closing down one of the buildings on the Mossville facility and transferring employees from that facility to the building where Bennington worked. Bennington supervised this relocation process and retained his other responsibilities.

In December 1997, Jerry Holloman retired from Caterpillar. Prior to his retirement, however, he completed a performance evaluation for Bennington. On the whole, Holloman's evaluation of Bennington was quite favorable. However, the evaluation also stated that Bennington should have used certain tools, "8D teams or FMEA activities," in his capacity as a supervisor. Caterpillar claims that these comments were critical of Bennington and Bennington contends that they merely set forth goals for the coming year. While Holloman characterized his evaluation of Bennington as an "extremely good review," Caterpillar management reviewed the report and found that it did not adequately reflect its concerns with Bennington's performance. Therefore, Holloman's supervisor, Paul Wroblewski, made several changes to Bennington's review.

As a result of these changes, Bennington was eventually given a very negative performance evaluation for 1997. Specifically, the evaluation noted that Bennington avoided taking responsibility for his results, that inventory, accuracy, quality, and safety in Bennington's area of supervision did not meet appropriate standards and that Bennington's efforts at implementing team-based initiatives were minimal. Caterpillar supervisors also created a supplemental evaluation criticizing Bennington for his failure to apply leadership skills to problems arising in the area he supervised.

In February 1998, Caterpillar decided to eliminate Bennington's position.

Caterpillar contends that this decision was consistent with its teamwork initiative. Although the company did eliminate Bennington's position, it did not terminate Bennington. Instead, Bennington was transferred, along with other managers whose positions had been eliminated, to a unit entitled the "Special Projects Group." According to Bennington, the Special Projects Group was routinely referred to by his supervisors as "waste management" and his duties there were minimal. Bennington remained at the same rate of pay after this transfer, however, he was assigned to an empty work area and was told to look for work.

Shortly after this transfer, Bennington told his supervisors that he was contemplating retirement. According to Bennington, he felt undermined by his 1997 review and the elimination of his position. Bennington announced his retirement in April 1998 and officially retired that July.

After his retirement, Bennington filed suit against Caterpillar. Bennington's complaint alleged that Caterpillar violated the Age Discrimination in Employment Act ("ADEA") by transferring him, by constructively discharging him, and by creating a hostile work environment. Bennington also alleged that Caterpillar intentionally inflicted emotional distress upon him.

After the discovery deadline had passed, Bennington filed a motion for an extension. This motion was denied. Caterpillar then filed a motion for summary judgment, which was briefed by the parties. After briefing of the motion, the district court granted summary judgment against Bennington on all counts. Bennington filed the instant appeal.

II. DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all the facts and drawing all reasonable inferences in the non-moving party's favor. Spearman v. Ford Motor Co., 231 F.3d 1080, 1084 (7th Cir. 2000). We exercise an abuse of discretion standard over a district court's refusal to reopen discovery. See, e.g., Kalis v. Colgate-

Palmolive Co., 231 F.3d 1049, 1056 (7th Cir. 2000).

A.  Grant of Summary Judgment

   The district court granted summary judgment on all four counts of Bennington's suit. As will be described more fully below, we agree with the district court's disposition of Bennington's claims, as Bennington has failed to create a factual record that would permit his case to go to trial.


   1.  Prima Facie Case of Age Discrimination

   In ruling on Caterpillar's summary judgment motion, the district court concluded that Bennington failed to establish a prima facie case of age discrimination by Caterpillar. Bennington has conceded that he presented no direct evidence that Caterpillar discriminated against him because of his age./1 Accordingly, his claim must be analyzed pursuant to the indirect burden-shifting approach set forth under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell-Douglas test, in order to establish a prima facie case of age discrimination, a plaintiff must prove that he was: (1) in a protected class; (2) performing his job satisfactorily; (3) the subject of an employment action that was materially adverse; and (4) that other substantially younger and similarly situated employees were treated more favorably than the plaintiff. See Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1031 (7th Cir. 1998). The district court determined that Bennington failed to state a prima facie case because he could not satisfy the fourth element of the above test: that other substantially younger and similarly situated employees were treated more favorably than the plaintiff. Having reviewed the record below, we agree with the district court's decision.

   At the outset, we state that the record is bereft of facts supporting Bennington's claims of age discrimination. We must base our review only upon those facts that were a part of the record before the court below. Plakas v. Drinski, 19 F.3d 1143, 1147 (7th Cir.

1994). When we examine that record, we find that Bennington has offered proof that only one other similarly situated and younger employee was given preferential treatment. That employee, Perry Lubber, took over Bennington's responsibilities when he was transferred to the Special Projects Unit and was only five years younger than Bennington./2 Generally, when both the plaintiff and those allegedly favored over him are within the same protected class, "the prima facie case under the ADEA require[s] a sufficient disparity in ages." Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 892 (7th Cir. 1997). This court "consider[s] a ten year difference in ages (between the plaintiff and [his] replacement) to be presumptively 'substantial.'" Id. at 893. In Hartley, this court concluded that a seven-year difference between the plaintiff and the employees allegedly favored over her was not significant enough to present a prima facie case under the ADEA. Just as in Hartley, the five-year difference in age between both Bennington and Lubbers is not substantial enough (in and of itself) to set forth a prima facie age discrimination case.

In cases where the age difference between the plaintiff and the individual treated more favorably is less than ten years, "the plaintiff still may present a triable claim if [he] directs the court to evidence that [his] employer considered [his] age to be significant." Id. Bennington has not presented any evidence that Caterpillar's decisions affecting his employment were motivated by his age. Even assuming, as we must, that the Special Projects Unit to which Bennington and other managers were assigned had been derisively referred to as "waste management" by Caterpillar higher-ups, or that Bennington's review was changed improperly, such comments or actions do not (without more facts) evidence hostility on the basis of age. The insubstantial difference in age between Bennington and Lubbers and the absence of discriminatory animus by Caterpillar supports the district court's grant of summary judgment on this claim.


2.  Constructive Discharge

The district court's ruling on Bennington's constructive discharge can

be affirmed largely for the same reasons as set forth above: the record contains no evidence of Caterpillar's discriminatory animus towards Bennington. To establish that he was constructively discharged, Bennington must show that "his working conditions were so intolerable that a reasonable person would have been compelled to resign." Simpson v. Borg-Warner Automotive, Inc., 196 F.3d 873, 877 (7th Cir. 1998). Bennington must also demonstrate that the working conditions were intolerable because of impermissible age discrimination. Id.; see also Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998). Bennington has failed to link the conditions of his employment to any age-related bias on the part of Caterpillar. Accordingly, we affirm the decision of the district court.

3. Hostile Work Environment

Bennington asserts that he was subjected to a hostile work environment because of his age. This circuit has assumed, without deciding, that plaintiffs may bring hostile environment claims under the ADEA. See Halloway v. Milwaukee County, 180 F.3d 820, 827 (7th Cir. 1999). We will do likewise here because we conclude that, even if such a hostile work environment claim could be brought under the ADEA, Bennington could not prevail.

In order to succeed on a hostile work environment claim, "the environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). To determine the hostility of an environment, a court must examine the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance . . . ." Id. at 787-88. As stated above, Bennington has failed to produce evidence that the alleged offensive conduct was discriminatory. Based upon the record before us, Caterpillar officials may have been rude or unfair to Bennington. However, absent more facts this conduct does not rise to

the level of legally redressible discrimination.

4.  Intentional Infliction of Emotional Distress

We also affirm the district court's disposition of Bennington's Illinois common law claim for intentional infliction of emotional distress. Under Illinois law, the elements of a claim for intentional infliction of emotional distress are as follows: (1) the conduct involved must be truly extreme and outrageous; (2) the defendant must either intend the infliction of emotional distress or know that there is a high probability that his conduct will result in such distress and; (3) the conduct must in fact cause severe emotional distress. McGrath v. Fahey, 553 N.E.2d 806, 809 (Ill. 1988). In addition, Bennington's distress must be "so severe that no reasonable man could be expected to endure it." Id.

Apart from the bald assertions contained in Bennington's complaint, there is scant evidence that Caterpillar intended to inflict distress upon him. Furthermore, Bennington has proffered no evidence (either in the form of medical documentation or deposition testimony) that he has in fact suffered from any form of emotional distress. Because Bennington "cannot leave it to this court to scour the record in search of factual or legal support for" his allegations, we affirm the decision of the district court with respect to this claim as well. Colburn v. Trustees of Indiana Univ., 973 F.2d 581, 593 (7th Cir. 1992).

B.  Refusal to Reopen Discovery

Lastly, Bennington contends that the district court erred in not reopening discovery in this case after the deadline had expired. Prior to the district court's decision on this matter, this case had a rather lengthy history. Bennington's first counsel was replaced by a substitute counsel and the discovery deadline was extended. After this seventh month extension was granted and the next discovery deadline expired, Bennington's second counsel moved to reopen discovery. At oral argument, counsel for Bennington conceded that after the discovery

extension was granted he "probably was not as diligent as [he] should have been in pursuing discovery. . . ." In light of the procedural meanderings of this case (two separate counsel and at least one discovery extension), this court cannot conclude that the district court acted outside the bounds of its discretion in denying Bennington's motion.

III.  CONCLUSION

   For the foregoing reasons, we Affirm the decisions of the district court.

FOOTNOTES

/1 According to the precedent of this court, direct evidence is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." Hill v. Burrell Communication Group, 57 F.3d 665, 667 (7th Cir. 1995) (internal citations omitted).

/2 Lubber, as an individual over forty years of age, was also in a protected class pursuant to the ADEA.