NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 2, 2011
Decided August 8, 2011

**Before**

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3222

| | |
|---|---|
| RONALD T. SCHAEFER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
| *v.* | |
| | No. 2:05-cv-240-LJM-TAB |
| MARK A. BEZY, *et al.*, | |
| *Defendants-Appellees*. | Larry J. McKinney, |
| | *Judge*. |

**O R D E R**

Ronald Schaefer, a former inmate at the Terre Haute Federal Correctional Complex, appeals for the second time from the dismissal of his claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). During Round 1, the district court granted summary judgment for the defendants on the ground that Schaefer had failed to exhaust his administrative remedies before filing suit. We found, however, that material facts relating to exhaustion were in dispute and thus remanded for an evidentiary hearing on that issue. See *Schaefer v. Bezy*, 336 F. App'x 558 (7th Cir. 2009).

After a *Pavey* hearing, see *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008), the district

court found that Schaefer indeed had failed to exhaust available administrative remedies and again dismissed the case. Schaefer now challenges that ruling. He is convinced that the key prison employee who testified at his hearing, one Officer Stanley Kraemer, was the *wrong* Kraemer and thus was in no position to refute Schaefer's story. While we appreciate the fact that both Schaefer and his counsel believe in the existence of two Kraemers, the objective facts in the record provide no support for this unusual theory. With that possibility out of the way, there is nothing to impugn the district court's finding that Schaefer failed to exhaust his remedies in the prison and thus cannot proceed with his lawsuit. We therefore affirm the district court's judgment of dismissal.

**I**

Schaefer is now 78 years old. In late May 2005 he reported to the Federal Correctional Complex in Terre Haute, Indiana, to complete the final eight months of a 37-month prison term for mail fraud and wire fraud. For the first week he was held in the maximum-security penitentiary within the complex, but on June 3 he was assigned to the prison camp there. Schaefer had served the earlier portions of his sentence in the camp, in two segments spanning the years 2001 to 2004, but twice he was released pending resentencing after successful appeals. See *United States v. Schaefer*, 384 F.3d 326, 338 (7th Cir. 2004); *United States v. Schaefer*, 291 F.3d 932, 935 (7th Cir. 2002). While released he underwent treatment for osteoarthritis. When he returned to the facility in 2005 after the second resentencing, Schaefer brought a letter from his doctor stating that he needed pain medication and that without continued therapy he likely would need a hip replacement.

Schaefer initially filed this suit *pro se* in September 2005; after his release from prison he retained an attorney and amended his complaint. His complaint accuses the prison employees of violating the Eighth Amendment by failing to treat his osteoarthritis. He asserted that he started asking for care in June 2005. When care was not forthcoming, he thrice used an informal procedure known as a "cop-out" (officially called an "Inmate Request to Staff" or a BP-AO148) to bring his problem to the prison's attention. After screening the district court allowed the suit to proceed against the prison warden and doctor.

Before answering Schaefer's complaint, the defendants filed a motion to dismiss or, in the alternative, for summary judgment, contending that Schaefer had failed properly to exhaust his BOP administrative remedies, see 42 U.S.C. § 1997e(a); 28 C.F.R. §§ 542.10-542.16. The cop-out that Schaefer had used is intended for general inquiries or necessities and is not related to the grievance system. 28 C.F.R. §§ 542.13-542.14. Schaefer argued, however, that his failure to avail himself of the grievance process should be excused because the correct process had been unavailable to him. In an affidavit he explained that on June 3, 2005, he told his counselor, whom he identified only by the surname "Kraemer," that he needed immediate orthopedic care, and that Kraemer had instructed him to use a cop-out to make his request. Schaefer said

that he resisted and requested a grievance form, but Kraemer refused to give it to him because the full administrative process would extend past Schaefer's expected release date. The defendants replied with a declaration from Stanley Kraemer, who said that he is a counselor but was not Schaefer's counselor in June 2005. Kraemer had been Schaefer's counselor for brief periods in 2001 and 2004, but he had transferred from the prison camp to the penitentiary in March 2005. From then on, Kraemer maintained, he did not work at the camp where Schaefer was an inmate and had no contact with camp inmates. Kraemer asserted that he did not even remember Schaefer but was sure that he had never refused to give an inmate a grievance form.

In its first order granting summary judgment for the defendants, the district court credited Kraemer's account of the facts and concluded that Kraemer could not have refused to give Schaefer a grievance form. Schaefer's statement conflicted with Kraemer's, however, and so in Schaefer's previous appeal this court concluded that a genuine issue of material fact – whether formal prison remedies were available to Schaefer – remained unresolved. We remanded the case to the district judge for an evidentiary hearing to resolve the conflicting accounts.

The district court held the hearing on November 10, 2009. At that hearing, Stanley Kraemer testified that he was transferred to the penitentiary in early 2005 and afterward had no contact with inmates at the prison camp. He never worked in the complex's Education Department or assisted with job fairs inside the prison camp. Kraemer repeated the statement in his declaration that he never denied Schaefer's request for a grievance form, and he added that it would violate prison policy to recommend that an inmate bypass administrative remedies. Kraemer could not definitively say which of the complex's buildings he entered on June 3, 2005, but he thought it was "highly unlikely" that he visited the prison camp on that day. Although Kraemer still maintained that he did not remember Schaefer, he acknowledged that he knew he had been his counselor at some time in 2004. A secretary at the penitentiary authenticated Kraemer's work schedules and time sheet, which corroborated his testimony that he worked at the penitentiary beginning in March 2005. Kraemer's performance evaluations from 2004 to 2006 also memorialize the transfer.

Schaefer also testified at the hearing, and in what must have seemed an odd turn, he insisted that never before had he seen the Stanley Kraemer in the courtroom. (As we explain further below, Kraemer's appearance had changed drastically between 2003 and 2009; photographs and testimony indicate that he lost about 130 pounds.) Schaefer explained that he must have conveyed his need for medical care to a different counselor named "Kraemer," or perhaps "Kramer," who worked at the prison camp from 2003 to 2005. Contradicting his affidavit, Schaefer said that the "Kraemer" he spoke with on June 3, 2005, was not his assigned counselor. Rather, "Kraemer" had been Schaefer's counselor in 2004 and was then transferred, according to Schaefer, to the Education Department, where Schaefer continued to work with him and assist with inmate job fairs. Schaefer maintained that he did not know who his new counselor was on June 3, and so instead he spoke to "Kraemer"—his former counselor and a

friend—when the two men ran into each other in a hallway of the camp. It was that "Kraemer" who told Schaefer to submit a cop-out in order to get the medical help that he needed. Schaefer, further changing his story, said that "Kraemer" did not give him a grievance form because "Kraemer" no longer had access to them. But in the middle of June, he contended, he learned that his new counselor was a "Mr. Parker," and he did ask Parker for a grievance form but was refused. Schaefer now said that Parker, not "Kraemer," told him that filing a grievance would be pointless because he would be released from prison before the grievance was resolved. The defendants, on rebuttal, called a BOP employee who testified that in 2005 there was no one named "Kraemer" or "Kramer," other than Stanley Kraemer, working as a counselor at the Terre Haute complex. There was another employee named "Kraemer" at Terre Haute, the witness said, but that person was a female guard.

After the hearing Schaefer asked the district court to reserve decision on the exhaustion issue until the parties could determine whether more than one counselor named Kraemer worked at the Terre Haute complex. Schaefer wanted to examine personnel records "for all staff members." Schaefer's attorney submitted a declaration stating that, at the start of the case, defense counsel had mentioned that there were two male prison counselors with last names that sound like "Kraemer." The defendants objected and attached a record of Schaefer's assigned counselors for his time at the camp; that list shows that Schaefer was assigned to "S. Kraemer" in 2001 and 2004, and that he was assigned to "D. Parker" upon his return to the facility on May 27, 2005. Schaefer then filed a motion to compel discovery, reiterating the same points in his "motion to reserve decision" and complaining that the defendants had refused to engage in further discovery after the *Pavey* hearing. Noting the untimely nature of this request, the defendants essentially conceded this point, but they also submitted a declaration from D. Parker denying that he ever told Schaefer to bypass the grievance process or to submit a cop-out as a substitute for a grievance. Finally, the defendants included a declaration from yet another BOP employee who confirmed that Stanley Kraemer was the only male employee with the surname Kraemer or Kramer at Terre Haute from 2001 to 2005.

About a month after filing the motion to compel, Schaefer's counsel wrote to defense counsel requesting additional information. In response to defense counsel's request for further detail, he listed quite a number of specific items, including things like a complete list of all inmates from 2001 to 2004, lists of different types of employees at the complex from 2001 to 2005, and fingerprints and photographs for all the case counselors. Defense counsel responded (without waiving his objections to Schaefer's request for more discovery at that late date), but the gist of his answer was that those lists did not exist.

The district court denied Schaefer's motions on grounds of both timeliness and futility. The court concluded that the defendants had proved that Schaefer had administrative remedies available that he did not exhaust. It credited the testimony of Stanley Kraemer and the BOP employee and found that Kraemer was not Schaefer's counselor when he returned to the prison

camp in 2005. It followed, the court reasoned, that "counselor Kraemer could not and did not refuse Schaefer's request" for a grievance form. The court did not address Schaefer's testimony that he encountered Kraemer in the camp after Kraemer's transfer, a possibility that Kraemer had not ruled out but characterized as "highly unlikely." Neither did the court address Schaefer's testimony that in mid-June he requested a grievance form from Parker—who, the defendants agree, was his counselor—and was refused. The court did, however, discredit Schaefer's testimony that on June 3 he spoke with another counselor named "Kraemer."

Schaefer, still represented by retained counsel, filed a motion for reconsideration, contending that he now possessed documents from his time in prison showing that the Stanley Kraemer who testified at the *Pavey* hearing was not the "Kraemer" who was his former counselor and the man with whom he spoke on June 3, 2005. Schaefer asserted that these documents had just been discovered by his daughter in their garage. One of the documents, which he submitted with his motion, is his progress report from a career-development course that he says "Kraemer" taught (although the instructor's name is not on the report). The report is signed by a case manager, "Baskerville," and a unit manager, Phyliss King, who Schaefer said could verify that "Kraemer" had taught the course as part of his organization of the job fairs and was Schaefer's counselor. Also among the documents, said Schaefer, was contact information for two fellow prison-camp inmates, who corroborated his recollection that the missing "Kraemer" is overweight, is under six feet tall, and has a round face and a thinning hairline. The Kraemer who testified at the *Pavey* hearing, Schaefer continued, was not overweight, was more than six feet tall, and sported a full head of hair.

The defendants, in response, disputed that Schaefer's evidence was newly discovered. They located Baskerville, who reconfirmed that Stanley Kraemer was the only counselor with that surname (or one similar) at the complex, but Baskerville agreed with Schaefer that the man he remembered as his counselor was stocky, under six feet tall, and round-faced. Baskerville proved the point by including a photograph of Stanley Kraemer from 2003. But the defendants also submitted a declaration from Stanley Kraemer, in which he explains that he stands at 5'11" and has lost over 130 pounds since May 2005. Kraemer attached a current photo and agreed that in 2003 he was considered overweight. Kraemer also explained that he did not teach the career-development course.

Schaefer submitted a reply asking for another evidentiary hearing. Buried in a declaration attached to that reply, Schaefer asserts that neither of the photographs of Stanley Kraemer resembles the "Kraemer" who was his counselor and instructor. The district court denied the motion for reconsideration, finding that Schaefer's evidence had been available to him well before the evidentiary hearing.

**II**

On appeal Schaefer makes only one argument: that the district court erred by not allowing him to engage in further discovery after the *Pavey* hearing to prove his contention that Stanley Kraemer is not the "Kraemer" or "Kramer" who once served as his counselor and was the man he spoke with on June 3, 2005. The point of the remand, says Schaefer, was to produce "Kraemer," and in his view the district court failed to assure that this happened.

Schaefer assumes that the panel's review is *de novo*, as with a ruling at summary judgment, but he is mistaken. The kind of evidentiary hearing contemplated by *Pavey* is distinct from summary judgment, 544 F.3d at 741-42, and requires the district court to make factual findings. As we noted in *Pavey*, "not every factual issue that arises in the course of a litigation is triable to a jury as a matter of right." *Id.* at 741. This court reviews factual determinations for clear error, FED. R. CIV. P. 52(a)(6); *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010); *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 379 (7th Cir. 2010), and as long as the court's finding represents a plausible view of the evidence, it cannot be clearly erroneous, *Kanter v. Comm'r.*, 590 F.3d 410, 417-18 (7th Cir. 2009); *Indiana Funeral Dirs. Ins. Trust v. Benefit Actuaries, Inc.*, 533 F.3d 513, 519-20 (7th Cir. 2008).

Schaefer's sole argument on appeal, that the district court should have reopened discovery so that Schaefer could search for the other "Kraemer," fails. For starters, based on Schaefer's testimony at the hearing, finding "Kraemer" would not have done him any good. This court remanded Schaefer's case in 2008 because there was a material issue of fact about whether Schaefer's counselor denied him a grievance form and told him instead to use a cop-out. On remand Schaefer testified that the "Kraemer" he is searching for was not his counselor in 2005 and could not have given him the grievance form because he no longer had access to them. The missing "Kraemer" seems to have been simply a former counselor who offered some friendly advice but, as Schaefer admitted at the hearing, did not refuse to give him a grievance form. Even assuming there is a different "Kraemer," therefore, this person did not deprive Schaefer of access to the form he needed and thus did not bar Schaefer from the proper grievance process.

Even if locating "Kraemer" might have mattered, the district court was under no obligation to grant Schaefer's request for further discovery after the hearing. Trial courts have broad leeway to manage discovery matters. See *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006); *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004). Our earlier order was issued on July 7, 2009; the hearing took place four months later, on November 10, 2009. This was plenty of time for both parties to gather whatever evidence was pertinent. Based on that evidence, the district court found that there was no other counselor named "Kraemer." In so doing, the court credited Stanley Kraemer's testimony and rejected Schaefer's. Credibility findings can virtually never be clear error. *United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007); *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 848 (7th Cir. 2005). As it happens, the evidence that surfaced after the hearing also supports the district court's conclusion. The vast difference in Stanley

Kraemer's appearance in the photographs taken in 2003 and 2009 suggests one obvious explanation for Schaefer's confusion. Schaefer has never addressed this evidence; he simply asserted that neither photograph of Stanley Kraemer resembled his counselor "Kraemer." Baskerville, however, identified the 2003 photograph as the only male counselor named Kraemer in the complex.

Schaefer must show that the district court abused its discretion by refusing to reopen discovery. See *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 603 n.2 (7th Cir. 2006); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658, 661 (7th Cir. 2001). We find no such abuse here. Schaefer had opportunities to investigate the identity of "Kraemer" before the hearing. Indeed, counsel was on notice of the potential issue of two Kraemers from the beginning of the litigation, and yet did nothing to pursue the matter until after the hearing. Schaefer also had known since the time that the motion for summary judgment was filed in 2008 that Stanley Kraemer would testify that he was transferred from the camp to the penitentiary in March 2005. In contrast, Schaefer's "Kraemer," was supposedly transferred to the Education Department in 2004. Schaefer could have pursued further avenues of inquiry, including the documents later found in his garage, before the hearing. Moreover, Schaefer had ample time *after* the hearing—six months between his motion to reopen discovery and the district court's ruling on exhaustion—to pursue his own investigation. He could have spoken to other employees at the Terre Haute complex, or searched the surrounding area for other surnames like "Kraemer," for example. And when Schaefer received the response from defense counsel that the documents Schaefer had requested do not exist, he did not follow up with more targeted requests. When "no effort was made to present the issue to the court in a timely fashion and when no effort was made to explain why the requested discovery could not have taken place within the original discovery period," the district court may deny a motion to compel or to reopen discovery. See *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056-57 (7th Cir. 2000).

### III

We recognized in our earlier decision that a key factual issue had to be resolved before Schaefer could move forward with his case, namely, whether his failure to use the prison's established grievance procedures had been impeded by prison officials. The district court held a hearing and found as a matter of fact that no such excuse existed. Schaefer therefore cannot satisfy the requirements of 42 U.S.C. § 1997e(a), which requires the exhaustion of "such administrative remedies as are available." See *Woodford v. Ngo,* 548 U.S. 81 (2006). We therefore AFFIRM the judgment of the district court.