**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2012[*]
Decided February 4, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2018

| | |
|---|---|
| JOHN L. GURLEY,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>RAY LAHOOD,<br>Secretary of the Department of<br>Transportation,<br>    *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 10 C 3304<br><br>Rebecca R. Pallmeyer,<br>*Judge.* |

**O R D E R**

John Gurley appeals from a grant of summary judgment against him in his lawsuit alleging that his employer, the Federal Aviation Administration, discriminated against him because of his age when it took four different employment actions. Because none of the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

actions was materially adverse to Gurley and, further, he failed to show that the FAA treated any similarly situated employee more favorably, we affirm the judgment.

We recount the following facts in the light most favorable to Gurley. *See Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012). Gurley began working for the FAA, a unit of the Department of Transportation, in 1970, and by 2006 he was employed at the Chicago Air Route Traffic Control Center as a supervisory air-traffic control specialist. The FAA requires employees in that position to meet certain medical requirements for the safety of the public. At the end of July 2006 Gurley stopped coming to work because of intense dizziness, and a flight surgeon withdrew his medical certification the next month. When his absence began, Gurley had large reserves of leave: over 2000 hours of sick leave, more than 1500 hours of annual leave, and about 345 "credit hours" that he had earned by working extra hours.

Gurley's doctors eventually diagnosed him with "persistent vertigo," and he remained absent from work on sick leave for over eight months. During Gurley's extended absence, the FAA repeatedly asked him for information about his condition; although Gurley submitted some of his medical records, the FAA informed him that the documents did not provide enough information to comply with the agency's sick-leave policy because they did not include a prognosis or a diagnosis of his illness. When Gurley returned to work in April 2007, Anthony Milligan, the Operations Manager at Gurley's facility, reprimanded him for failing to follow leave procedures and provide even basic information that was necessary for the FAA to review his requests for sick leave. Milligan explained that those actions were unacceptable because, as a supervisor, Gurley had to enforce the same leave policies that he had "ignored."

The FAA's frustration with Gurley's extended absence and insufficient information about his condition came to a boil even before he returned to work. During his absence, Gurley had submitted a request to use his credit hours, rather than annual or sick leave, to cover two months between January and March 2007. Unused annual leave is converted to cash at the end of one's employment at the FAA; unused credit hours and sick leave are forfeited. Milligan denied Gurley's request, citing what he called "operational necessity." Milligan did, however, permit Gurley to use sick leave to cover his entire absence.

When Gurley returned to work, he told the FAA that he would retire nine months later, on January 3, 2008. For the time remaining before Gurley retired, Milligan directed that Gurley could not use his credit hours for any further absences unless he had first exhausted his annual leave. Milligan explained that he restricted Gurley's use of credit leave because the FAA "has a duty to be good stewards of public funds," and Gurley's huge annual-leave balance justified requiring him to use those hours first. According to

Milligan, although employees are expected to use their credit hours soon after they are earned, no policy guarantees the approval of requested credit leave.

Gurley believes that this directive was an act of age discrimination for three reasons. First, when Milligan issued this directive, Gurley had more hours in annual leave than there remained work hours before his scheduled retirement, so he would not be able to use his credit hours even if he took annual leave for all the remaining time before he retired. Second, Milligan admitted to a fellow employee that he hoped the directive would cause Gurley to "give up fighting it and retire." Third, no other employee was subject to this directive, and Gurley believes that a "younger" supervisor, John Kazmierczak, was permitted to use all of his credit hours "just prior to retiring" in June 2007.

Two additional conflicts occurred later in 2007 before Gurley retired. First, in May Gurley requested sick leave because he had burned his hand, and Milligan granted him two hours of leave. Gurley had requested and believed that he needed four. Second, in September, the FAA issued Gurley a proposed letter of termination because he had not been medically cleared to perform his regular job duties since he returned to work in April. But a flight surgeon restored Gurley's medical certification soon after, and the FAA withdrew Gurley's termination notice without ever disrupting his employment.

Gurley retired as planned in January 2008. He still had 1032 hours of remaining sick leave and 345.75 credit hours, which he forfeited. He also had 1511 hours of annual leave, which resulted in a gross payment to him of more than $124,000.

Two years later, Gurley sued the Department of Transportation under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a). He alleges that the FAA discriminated against him because of his age by: (1) reprimanding him for failing to follow leave procedures; (2) denying his request to use credit hours to cover part of his absence and restricting his future use of credit hours; (3) permitting him to take only two hours of sick leave; and (4) issuing the proposed letter of termination. The FAA moved for summary judgment, which the district court granted. It reasoned that none of Gurley's challenged actions were adverse employment actions. With respect to Milligan's directive restricting Gurley's use of credit hours, the court explained that Gurley had not been harmed because he used only sick leave during his absence and he did not use any annual leave after the directive was issued. The court also determined that Gurley failed to meet his burden of showing that the FAA's reasons for issuing the directive were pretextual. On appeal Gurley maintains that each of his four challenged actions—the credit-leave directive, the reprimand for not complying with leave procedures, the denial of two hours of sick leave, and the proposed termination—are adverse employment actions that were motivated by age bias.

We agree with the district court that summary judgment was proper because Gurley failed to show that he suffered adverse employment actions. To establish a prima facie case of age discrimination under the indirect method, which Gurley relies on, he must produce evidence that (1) he is at least 40 years old; (2) his performance met the FAA's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee who is at least 10 years younger than he is. *See Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 475 (7th Cir. 2008); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001). To be an "adverse employment action," an employer's decision must significantly alter the terms or conditions of the employee's job. *See Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *Hancock v. Potter*, 531 F.3d 474, 478 (7th Cir. 2008).

None of the actions that Gurley identifies were adverse. Gurley argues that the FAA unreasonably delayed in withdrawing the proposed letter and had no cause for the reprimand. But neither the reprimand nor the letter, which was later withdrawn, had any effect on Gurley's job title, responsibilities, or work hours and pay. So it does not matter whether the FAA delayed in withdrawing the letter or should not have reprimanded him. The same is true for Milligan's decision to grant only two hours of sick leave for Gurley to treat his hand, because Gurley agrees that his hand was adequately treated during the shorter leave allowance. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (adverse employment action must be more than mere "inconvenience"); *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000) (employer's decision must cause "significant change in benefits" to be adverse.)

The one action that deserves slightly more discussion is the credit-hour directive. Gurley insists that Milligan's directive restricting his use of credit hours was materially adverse to him because it prevented him from using any of his 345 credit hours before his scheduled retirement, when they became worthless. But Gurley could claim a monetary loss only if he had needed to miss work after the directive was issued and had been forced to use compensable annual leave. Yet he used no annual leave. Thus, as the district court found, the only actual "harm" Gurley suffered was having to come to work. Requiring an employee to come to work when the employee has no need to miss work is not an adverse action. What is more, the FAA also submitted uncontradicted evidence that no policy required it to approve requests for credit hour leave. Therefore, the agency was not obligated to let Gurley sit out another 345 hours after his 8-month absence even if Milligan had not issued the directive. In these circumstances, we agree that the directive was not materially adverse to Gurley.

Even if the directive was an adverse employment action, however, Gurley also failed to show that the FAA treated more favorably another "similarly situated" employee outside his protected class. To satisfy that requirement with respect to the directive, Gurley had to submit evidence that another employee at least 10 years younger engaged in roughly the same conduct that he did but was not prevented from using his credit hours soon before his retirement. *See Harris v. Warrick Cnty. Sherriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012); *Bennington*, 275 F.3d at 659. The FAA concedes that Milligan did not issue a similar directive to any other air-traffic controller. But Gurley has not cited another supervisor who, like him, was found by the FAA to have violated leave policy during an extended absence and then requested comparable credit leave immediately after his return. In his affidavit Gurley compares himself to Kazmierczak—who he says was permitted to use all of his credit hours "just prior to retiring"—but Gurley says nothing about Kazmierczak's age, whether the FAA believed Kazmierczak had engaged in any similar misconduct, or whether Kazmiercazk had credit hours and annual leave at anywhere near the same levels that Gurley did. Since Kazmierczak himself did not submit an affidavit, no evidence establishes that he was a similarly situated employee outside Gurley's protected class.

We have reviewed the remaining contentions in Gurley's brief and conclude that none has merit.

AFFIRMED.