NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 23, 2014[*]
Decided January 30, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-1681

| | |
|---|---|
| VIRGINIA FUGATE, | Appeal from the United States District |
| *Plaintiff–Appellant*, | Court for the Northern District of |
| | Indiana, South Bend Division. |
| *v.* | |
| | No. 3:10-CV-344 |
| DOLGENCORP, LLC, and | |
| DOLLAR GENERAL CORPORATION, | Rudy Lozano, |
| *Defendants–Appellees*. | *Judge*. |

### O R D E R

Virginia Fugate worked at a Dollar General store in New Carlisle, Indiana. She quit after four-and-a-half years as manager and sued Dollar General Corporation (and a subsidiary, which for simplicity we ignore) under the Age Discrimination in Employment Act. *See* 29 U.S.C. § 623(a)(1). Fugate, who was 49 when she left her job,

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

alleged that she was constructively discharged because of her age. The district court granted summary judgment for Dollar General on the ground that Fugate did not timely submit her administrative charge of discrimination to the Equal Employment Opportunity Commission. We affirm the judgment on the alternative ground that the working conditions that led to Fugate's resignation, though unpleasant, did not constitute a constructive discharge.

We recount the facts in the light most favorable to Fugate. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Fugate was hired in 2001 to stock shelves at the New Carlisle store and worked her way up to store manager in 2004. At the end of Fugate's first year in charge of the store, her district manager noted that sales at the store had been "strong" but rated her overall performance as "standard."

Then in the middle of 2006, Fugate's store was assigned to a different district manager, Maude Neely. She wrote Fugate's annual performance reviews for 2006 and 2007; the reviews were mixed. For 2006, Neely gave Fugate a lower overall score than the previous year—though still in the "standard" range—and a very low score for store cleanliness. In the review for 2007, Neely rated Fugate's overall performance as "good" (equivalent to the "standard" score she had received the prior year), resulting in Fugate receiving a 2.5% raise.

Neely, who was 33 when she began supervising Fugate, has not denied that she made disparaging or offensive comments that Fugate reasonably understood to be age-related. One day, Fugate came to work without her dental bridge and Neely exclaimed, "Oh my god, I can't believe you forgot your teeth!" When discussing the store's organization with Fugate, Neely also said: "What's the matter, is this work getting too much for you? Is it too much for you to handle?" Neely made similar comments to Fugate's assistant manager, Charlene Wind, who was in her sixties. When Wind offered to put up a sign in the window, Neely said, "Oh, you probably can't get up on a ladder, right?" Later, Neely again commented that Wind may not be able to climb a ladder and twice made comments about Wind being incapable of heavy lifting. Once, when another assistant store manager had forgotten something, Neely said to Wind: "Well, you'd know how it is because you guys are the same age. You'd probably forget it too." Neely also told Fugate to discipline that assistant manager (who was in her sixties) "as often as possible," and eventually demoted that assistant manager to sales associate.

Every couple of weeks or so, Neely would inspect Fugate's store and criticize the store's cleanliness and organization, usually in front of customers and Fugate's

subordinates. During visits, Neely also would complete a scorecard used by all Dollar General district managers to assign the store one of four grades: "Outstanding," "Wow," "How," or "Help." With the exception of one higher rating, Neely consistently gave Fugate's store a "How" grade, indicating that the store needed to be tidier and cleaner. Neely also frequently criticized Fugate's management skills, accusing her of not keeping her employees accountable.

In April 2008, Neely not only rated Fugate's store "How" but also issued a disciplinary note to Fugate; the record does not indicate the consequences of receiving such a writeup. Although Wind was not disciplined, she called the company's hotline and complained that Neely was harassing her and Fugate based on their age. In response, the regional manager visited the store. He showed Fugate photographs that Neely had sent him of a dirty store. Neely had told him that the pictures were of Fugate's store, but Fugate recognized that they were taken at a different store and told the regional manager as much. He replied that he would discuss the incident with Neely. He then inspected the store, noting several improvements from his last visit years before and giving Fugate advice on how she could make further improvements.

Neely's criticisms continued. On her next visit, she noticed some wax on the floor and—in front of the other employees—made Fugate scrape it up. During an inspection in November 2008, Neely threatened to issue another disciplinary note because one section of an aisle was slightly disordered. Fugate walked out, and within hours Neely replaced her with a manager who was in her thirties. That news prompted Wind to walk out as well.

Fugate's husband encouraged Fugate to file an age-discrimination charge with the EEOC, but she was reluctant to do so. In May 2009, the week before the 180-day deadline for filing an age-discrimination charge in Indiana, *see EEOC v. N. Gibson Sch. Corp.*, 266 F.3d 607, 617 (7th Cir. 2001), *overruled in part on unrelated grounds by EEOC v. Waffle House*, 534 U.S. 279 (2002); *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 350 n.2 (7th Cir. 1992), Fugate's husband called the South Bend Human Rights Commission, which accepts ADEA charges under a work-sharing agreement with the EEOC (Fugate was reluctant to make the call herself). He inquired about the procedure for filing a charge, and an investigator told him that Fugate and Wind might have a case but that she would need to discuss the facts with them in more detail. The next day Fugate called the same investigator and spoke to her for over an hour about the events leading up to her resignation from Dollar General. Fugate was still hesitant to file a charge of discrimination, but the investigator encouraged her to talk to Wind and then call back to

make an appointment. Fugate spoke with Wind, and the two agreed to file charges. Fugate then called the investigator on May 21, 2009—five days *before* the deadline—and the investigator scheduled an appointment for Fugate and Wind on May 28, 2009. Fugate and Wind signed formal charges at that appointment, which was 182 days after Fugate had resigned. The EEOC investigated the charges but could not substantiate the allegation of age discrimination.

Fugate (and Wind, who is not a party to this appeal) then hired counsel and sued Dollar General for age discrimination, alleging that Neely constructively discharged her based on her age by giving the store unwarranted negative ratings, submitting the false photographs to the regional manager, making offensive comments, and disciplining Fugate without cause.[1] There is no evidence that the EEOC thought that Fugate's administrative charge was untimely, and Dollar General did not raise the 180-day statute of limitations as an affirmative defense in its answers to her initial complaint or amended complaint. It was not until *two years* after Fugate had filed suit, when Dollar General moved for summary judgment, that the company argued for the first time that the EEOC charge was untimely because Fugate signed it 182 days after she quit her job.

---

[1] In her complaint, Fugate also stated that Neely created a hostile work environment, but it is unclear whether Fugate intended this to be a stand-alone claim (rather than a part of her claim of constructive discharge). We have assumed without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA. *See Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). (Two circuits have explicitly held that such claims may be brought. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996).) In this case, however, no remedy would be available to Fugate for a hostile work environment: Unlike Title VII, the ADEA permits damages only in the form of lost wages (past or future), not compensatory damages for pain and suffering or emotional distress, *compare Barton v. Zimmer, Inc.*, 662 F.3d 448, 454–55 (7th Cir. 2011) (discussing ADEA damages), *and Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 773–74 (7th Cir. 2002) (same), *with Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) (discussing damages under Title VII), and Fugate presented no evidence of lost wages apart from those related to her claim of a constructive discharge. We therefore treat Fugate's claim as one of constructive discharge, just as the parties did at summary judgment (and do again on appeal).

At summary judgment Dollar General also maintained that Fugate had not established age discrimination because, in the company's view, she did not offer evidence that Neely's conduct was motivated by age and because the actions Fugate complained of did not rise to the level of a constructive discharge. Fugate opposed the motion, arguing that Neely's criticisms, offensive comments, and poor reviews of her performance effectively had compelled her to quit and established a discriminatory motive. Fugate also contended that Dollar General had waived its statute-of-limitations defense by not raising it earlier, and that, in any event, her charge was timely because she had told her story to the investigator for the South Bend Human Rights Commission *before* expiration of the 180-day deadline. It was not her fault, Fugate insisted, that the investigator had scheduled her appointment for two days *after* the deadline without alerting her to the statute of limitations.

In granting Dollar General's motion for summary judgment, the district court first concluded that Dollar General had not waived its statute-of-limitations defense by failing to raise it earlier because Fugate still was able to respond and was not unduly prejudiced. Second, the judge concluded that Fugate's administrative charge was untimely and that the doctrine of equitable tolling did not apply because, the judge reasoned, making an appointment with the Commission was not essential to submit a charge of discrimination and Fugate never contended that she was "lulled or misled into believing" that the deadline would be extended beyond 180 days. Because the judge granted summary judgment on timeliness grounds, he did not consider the merits of Fugate's claim.

On appeal Fugate argues that her charge was timely because she filed it on May 21, 2009, when she telephoned the investigator and confirmed that she wanted to proceed. Fugate cites 29 C.F.R. § 1626.7(b)(3), which states that a charge made orally or by telephone and later reduced to writing is deemed filed with the EEOC on the date the oral communication is made. She contends that the investigator should have filed her charge on May 21—five days before the deadline—instead of scheduling an in-person appointment for the following week without mentioning the 180-day deadline.

Dollar General not only leaves this argument unanswered, but in its brief goes so far as to assert that "Fugate does not dispute that she failed to file a timely Charge of Discrimination." But Fugate *does* dispute the conclusion that her charge was untimely, and her contention that she filed by phone is supported by the record. In a declaration submitted to the district court, Fugate averred that a week before the 180-day deadline she had discussed her case with the investigator by phone for over an hour. Although

she was hesitant to file at that time, the investigator should have mentioned the statute of limitations because the EEOC's regulations and compliance manual require investigators to describe the filing deadline to potential charging parties. *See* 29 C.F.R. § 1626.7; 1 EEOC Compliance Manual § 2.4(d)(2) (2009). In any event, when Fugate called a second time before the deadline, she *had* decided to file a charge. Charges of age discrimination under the ADEA may be submitted by telephone. *See* 29 C.F.R. § 1626.5. And the investigator could have recognized—indeed, presumably did recognize—that the 180-day deadline would expire in a few days and thus deemed Fugate's charge to have been made by phone. 1 EEOC Compliance Manual § 2.3(a) ("If a caller declines or cannot visit EEOC to file or complete the filing of a charge/complaint, counsel the person and take or complete the potential charge/complaint by phone."). The Supreme Court has endorsed the EEOC's position that "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). And on this record, a finder of fact could conclude that the investigator construed Fugate's second phone call as such a request.

Moreover, a plaintiff's failure to file a timely charge with the EEOC is an affirmative defense, so Dollar General had the burden of demonstrating the absence of a genuine factual dispute about the timeliness of Fugate's charge. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). Yet the company offered no evidence that the *EEOC* believed Fugate's charge to be untimely. In fact, the right-to-sue letter issued by the EEOC evidences that the agency believed just the opposite, further supporting Fugate's argument.[2] *See Philbin v. Gen. Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323–24 (7th Cir. 1991) (concluding that intake questionnaire and signed note that plaintiff submitted to EEOC constituted a timely charge, relying partly on the fact that the agency accepted documents and assigned a charge number to the claim). The letter is a form document, and "charge was not timely filed" is listed as one of seven *potential* reasons for dismissal. But the box next to "charge was not timely filed" is not checked;

---

[2] Even if the EEOC had *not* treated Fugate's charge as timely, her suit would not necessarily have been barred. *See Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1138 (7th Cir. 1994) ("[W]hile it is relevant that the EEOC *treated* the questionnaire as a charge, we have also held that inaction by the EEOC should not, for time limit purposes, bar an ADEA suit." (citing *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542–44 (7th Cir. 1988))); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001).

rather, the letter indicates that the charge was dismissed because the EEOC lacked sufficient evidence to confirm a violation of the statute.

Although not addressed by the district court, we believe it is possible that the investigator's actions in this case led Fugate "to believe that she had done everything required of her." *See Prince v. Stewart*, 580 F.3d 571, 574–75 (7th Cir. 2009) (concluding that equitable tolling applied where district court granted pro se litigant's motion to reopen and thus "lulled him into thinking he didn't have to refile his complaint"); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80–81 (7th Cir. 1992) (concluding that equitable tolling applied when EEOC told plaintiff he had completed all necessary paperwork for charge when he had only completed intake questionnaire). But in the end, because there is a clearer path to support the outcome arrived at by the district court, we need not decide whether Fugate's charge was untimely. It is well established that we may affirm a grant of summary judgment on any ground that is preserved and supported by the record. *See Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 946 (7th Cir. 2013); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 568 (7th Cir. 2012). Because we are persuaded by Dollar General's argument (made at summary judgment and on appeal) that the conduct Fugate complained of—negative performance reviews, constant and perhaps unfair criticisms, manufactured evidence (the photographs) of an unclean store, and offensive comments—does not establish a constructive discharge.

For Fugate to establish a constructive discharge, she needed proof that because of her age she was subjected to working conditions "so intolerable that a reasonable person would have been compelled to resign." *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). Her claim of a constructive discharge could survive summary judgment only if Fugate presented evidence of working conditions even more egregious than those required to establish a hostile work environment. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Fugate's evidence would permit a jury reasonably to find that Neely's conduct was unprofessional, boorish, and age-based at least in part. But the working conditions created by Neely, though unpleasant, do not meet the extremely high standard for a constructive discharge. *Compare Pa. State Police v. Suders*, 542 U.S. 129, 135–36, 152 (2004) (concluding that plaintiff's claim survived summary judgment where her supervisors constantly made obscene sexual comments and gestures, one supervisor pounded on furniture to intimidate her, and supervisors devised and executed a plan to have her arrested for theft), *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (concluding that evidence that African-American plaintiff's co-workers repeatedly displayed noose and threatened violence qualifies as "egregious for purposes of constructive discharge"), *and Taylor v. W. & S. Life Ins. Co.*,

966 F.2d 1188, 1190–91, 1199 (7th Cir. 1992) (concluding that considerable evidence supported district court's finding of constructive discharge where plaintiff's boss constantly made racist comments, brandished gun, took photograph of himself holding gun to plaintiff's head, and passed that photo around office), *with Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 705 (7th Cir. 1993) (concluding that plaintiff was not constructively discharged where she was excluded from office activities, unfairly reprimanded, assigned undesirable sales territory, denied new accounts, barred from supervising two white employees, and refused assistance from her boss).

At summary judgment, Fugate also presented an alternative constructive-discharge argument: that she quit because she reasonably believed that, had she not resigned, she would have been fired immediately. *See Chapin*, 621 F.3d at 679 (describing this form of constructive discharge). But Fugate's evidence does not support this theory; she consistently testified that she quit because she could no longer take Neely's unfair criticisms, not because she believed that her job would be terminated.

We AFFIRM the judgment of the district court because the working conditions that led to Fugate's resignation did not constitute a constructive discharge.