NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 17, 2015[*]
Decided February 18, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2476

| | |
|---|---|
| SHARON HOLYFIELD-COOPER, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellant*, | |
| *v.* | |
| | No. 13 C 3625 |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, | **Ronald A. Guzmán**, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Sharon Holyfield-Cooper, a former Chicago public school teacher with hearing loss, appeals the grant of summary judgment for the Board of Education in this suit asserting claims under the Americans with Disabilities Act, *see* 42 U.S.C. § 12112(a). We affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Holyfield-Cooper was hired in August 2008 by Katherine Tobias, the principal at George Washington Carver Elementary School in Chicago, to become assistant principal. The two women soon thereafter attended a training session at which the Board's nepotism policy was discussed, and Holyfield-Cooper says that she told Tobias at this time about her hearing loss. (She wears hearing aids.) Several weeks later Tobias removed Holyfield-Cooper from her position after learning that Holyfield-Cooper had a cousin who worked at Carver and would be under her supervision, in violation of the nepotism policy. At that time Holyfield-Cooper accepted Tobias's offer to take on teaching duties.

In December 2008 Holyfield-Cooper met with Tobias, who raised certain classroom-management concerns, including complaints from students that Holyfield-Cooper sometimes could not hear them or would even ignore them. Tobias asked Holyfield-Cooper not to turn her hearing aids off or down while she was in the classroom.

During the 2009–10 school year, Holyfield-Cooper twice violated school policies. First, Holyfield-Cooper received a 5-day suspension when she gave false statements during an investigation of a report she filed against Assistant Principal Wanda Withers, whom she accused of hitting a student, and after she left her students unattended in violation of school policy. In the notice of pre-discipline hearing, Tobias wrote, among other things: "Per our conversation last year, you were asked to wear your hearing aid at all times. Daily observations by administrators, staff members, and students continue to prove that you refuse to wear your hearing aid and therefore are jeopardizing student's safety, education, and your job performance." Holyfield-Cooper violated school policy a second time when she pushed an uncooperative student. After investigating the incident by interviewing students, Withers reported Holyfield-Cooper to the Department of Child and Family Services.

In November 2009 Holyfield-Cooper filed her first charge with the EEOC, claiming that she was demoted in 2008 and suspended because Tobias was discriminating against her on account of her hearing loss.

During the 2010-2011 school year, Holyfield-Cooper was suspended for 14 days for failing to properly supervise students. In one incident Holyfield-Cooper failed to intervene when a fight in her classroom broke out and left a student with two black eyes and a fractured nose. After this suspension (and on Tobias's recommendation), the Board warned Holyfield-Cooper that she was at risk of dismissal if her performance did not improve.

Holyfield-Cooper filed an amended charge with the EEOC in July 2011, claiming that administrators were retaliating against her for complaining of discrimination in 2009.

Holyfield-Cooper resigned at the end of the 2012 school year, after Tobias had lowered her "efficiency rating" from excellent to unsatisfactory. Tobias justified the changed mark based on the two suspensions and an incident in October 2011 when Holyfield-Cooper failed to apprise the school of an upcoming absence. The lower rating required Holyfield-Cooper to engage in a remediation plan, but she instead stopped coming to work in April and resigned ten days later.

Holyfield-Cooper then filed her third EEOC charge in January 2013 claiming that Tobias suspended her the second time and marked her down because of her hearing loss.

Holyfield-Cooper brought this suit under the ADA in May 2013, asserting that she was constructively discharged, subjected to both discrimination and retaliation, and exposed to a hostile work environment—all because of her disability. Holyfield-Cooper claimed that Tobias discriminated against her based on her disability when she (1) transferred her to a teaching position soon after learning about her hearing loss and (2) did not discipline similarly situated teachers who had classroom management problems. Holyfield-Cooper also asserted that she was retaliated against for complaining of discrimination in 2009 when she was suspended twice, when Tobias alleged that she was absent without approval and lowered her efficiency rating, and when the Board failed to provide a remediation plan. Finally Holyfield-Cooper asserted that Tobias's actions created a hostile work environment and constructively forced her to resign her position.

The district court granted the Board's motion for summary judgment. Regarding her claim of discrimination in connection with her August 2008 transfer, the court found the claim untimely because she did not file her first EEOC charge until November 2009, more than 300 days later. Holyfield-Cooper also failed to establish a prima facie case of discrimination based on her punishment for poor classroom management because she produced no evidence showing that the teachers whom she identified as receiving better treatment were similarly situated to her. Holyfield-Cooper's retaliation claim failed, the court continued, because she presented no evidence of a causal connection between her protected activity and the adverse employment actions. Finally, Holyfield-Cooper's claims of hostile work environment and constructive discharge failed because she produced no evidence that the actions were motivated by her hearing loss, or that the alleged harassment was severe or pervasive.

Holyfield-Cooper moved for reconsideration, arguing that the district court did not consider all of the exhibits that she had attached to her summary judgment motion, and in particular a student letter that, she says, corroborates her report about Withers hitting a student. The court had stricken the exhibits from her submissions at summary judgment because they contained unredacted students' names. Although the redacted versions of those same exhibits already were attached to her complaint, the district court invited Holyfield-Cooper to file the exhibits a second time within 21 days if she had the names redacted. Thirteen days later, however, the court granted summary judgment for the Board. In denying the motion to reconsider, the district court stated tersely that it had "considered all relevant documents in ruling on the defendant's motion for summary judgment."

On appeal, Holyfield-Cooper maintains that the district court did not consider the exhibits that were stricken from her submissions at summary judgment. It is true that the district court did not elaborate what conclusions it may have drawn from the stricken documents, but the court already had access to a redacted version of the exhibits and emphasized that it had considered all relevant documents. Further, even if the judge had not considered these documents, Holyfield-Cooper has not shown that she could have been prejudiced by the judge's failure to do so.

Holyfield-Cooper next invokes equitable tolling as a ground to challenge the determination that the claim based on her job transfer was time-barred. She maintains that the 300-day deadline should be tolled because she did not discover that the transfer was related to her hearing loss until some unidentified later date. But equitable tolling does not apply because Holyfield-Cooper had the information necessary to realize that any possible claim arose in August 2008, when she was transferred to a teaching position (and by which time Tobias had already become aware of her hearing loss). See *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860–61 (7th Cir. 2005).

Holyfield-Cooper disputes the conclusion that she failed to establish a prima facie case of discrimination by not identifying similarly situated teachers who had been treated better than she. Holyfield-Cooper states that Tobias and three veteran teachers received better treatment when: (1) between 1989 and 2004 Tobias and her sister were allowed to work at Carver together, which violated the nepotism policy; and (2) the three teachers had difficulty supervising students and were not reprimanded. But as the district court rightly concluded, Holyfield-Cooper presented no evidence to show that these persons were "directly comparable to [her] in all material respects," by, for

example, demonstrating that they "held the same position, had the same supervisor, [were] subject to the same standards, and engaged in similar conduct." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014) (internal quotation marks omitted); see *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504–05 (7th Cir. 2014).

Holyfield-Cooper next challenges the court's rejection of her retaliation claim and points to evidence that Tobias reacted to her EEOC charge by unfairly evaluating her and failing to give her a remediation plan. But notably, as the district court explained, Holyfield-Cooper did not offer evidence that Tobias or the Board retaliated against her *because* she complained of discrimination. See *Hancock v. Potter*, 531 F.3d 474, 479 (7th Cir. 2008). Instead, Holyfield-Cooper relies only on the timing of her EEOC filing and the subsequent discipline. But suspicious timing alone is not enough to support a finding of causation. See *Cung Hnin*, 751 F.3d at 508; *Henry v. Milwaukee County*, 539 F.3d 573, 587 & n.11 (7th Cir. 2008).

Finally, Holyfield-Cooper renews her argument that the disciplinary actions taken against her created a hostile work environment and constituted a constructive discharge. Even if we assume that she could bring a hostile work environment claim under the ADA, see *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009) (declining to decide whether hostile work environment claim is actionable under the ADA), Holyfield-Cooper did not offer evidence that hostility toward her disability motivated the disciplinary actions taken against her. See *Beamon v. Marshall Ilsley Trust Co.*, 411 F.3d 854, 863–64 (7th Cir. 2005); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). Nor did she offer evidence that these events (or warnings not to turn off her hearing aids in the classroom) were sufficiently egregious to support claims of hostile environment or constructive discharge. See *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (stating that work environment must be unendurable to support a constructive discharge claim); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) (noting that work environment must be objectively and subjectively hostile and abusive to support claim of harassment).

AFFIRMED.